Incollingo *v.* Ewing et al., Appellants.

300

Argued November 20, 1969; reargued May 6, 1971. Before BELL, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Edward W. Maderia, Jr.,* with him *James T. Giles, Marilyn Mauskopf,* and *Pepper, Hamilton & Scheetz,* for appellant.

*Francis E. Shields, Dolores B. Spina,* and *Pepper, Hamilton & Scheetz,* for appellant.

*Joseph G. Manta, James M. Marsh,* and *LaBrum and Doak,* for appellant.

*James E. Beasley,* with him *Jeffrey M. Stopford,* and *Beasley, Hewson & Casey,* for appellees.

OPINION BY MR. JUSTICE POMEROY, October 12, 1971:

This case is now before us on reargument limited to the issue of the proper measure of damages. Appellants in their original briefs and argument had challenged

the disparity in the measure of damages for personal injury resulting in death, depending solely upon whether suit is commenced before or after the death. The issue was adverted to in Part 4 of our opinion, but not decided because the record before us did not show that the question had been raised at the trial by exceptions to the charge or in points for charge. See *Evans v. Philadelphia Transportation Co.*, 418 Pa. 567, 212 A. 2d 440 (1965). In their petition for reargument, appellants brought to our attention portions of the trial record, not included in the printed record on appeal, which showed that in fact the question had been properly raised and preserved at trial. We accordingly granted reargument and now address ourselves to the merits of the problem.

As indicated in our original opinion, the nub of the issue is whether two disparate rules relative to the measure of damages in survival actions should continue to coexist as they have for twenty years, or whether one or the other rule should be scrapped. The rule which the court below correctly applied in this case, because the action was commenced during the lifetime of the minor plaintiff, Mary Ann Incollingo, is that of *Radobersky v. Imperial Volunteer Fire Department*, 368 Pa. 235, 81 A. 2d 865 (1951). Under the rule of that case, damages are awarded on the basis of the deceased plaintiff's anticipated gross earnings, with no deduction of cost of maintenance before reducing the loss of earnings to present worth. The rule which appellant urges upon us is that of *Murray v. Philadelphia Transp. Co.*, 359 Pa. 69, 58 A. 2d 323 (1948), applicable in cases where suit is commenced by the personal representative. Under *Murray* the measure of damages would be loss of *net* earning power—gross earnings diminished by the amount the deceased plaintiff would

have had to expend for his own maintenance had he not died, reduced to present worth.[1]

The arguments of the parties may be briefly summarized as follows: Appellant asserts that the dichotomy between the measures of damages is unjustifiable and that one rule applying to all survival actions should be adopted. That rule should be the realistically compensatory net earnings rule of *Murray*. The gross earnings rule of *Radobersky* awards damages which include the amount which the defendant would have had to expend on himself had he lived; when death has in fact occurred prior to suit, such an award is excessive and in effect punitive. Appellees counter that the *Murray* rule is the solitary aberration in a century of judicial decisions which establish estimated gross earnings as the standard of recovery, and if indeed the measure of damage rule is to be made uniform, it is the *Murray* decision rather than *Radobersky* which should be abandoned. Appellees' alternative position is that should we reverse the *Radobersky* decision, which was indisputably the governing law at the time of this trial, such ruling should in fairness be purely prospective so as not to apply in the instant case.

A brief review of the statutory and case law bearing upon the subject may be useful to an understanding of the problem. At common law, there was no recovery for wrongful death and the right of action for personal injuries whether or not suit had been commenced before death did not survive the death of an injured person. See *Murray v. Philadelphia Transp. Co., supra; Pennsylvania RR v. McCloskey's Admr.*, 23 Pa. 526

---

[1] The parties to the present litigation agree, as do the *Murray* and *Radobersky* cases, that in either category of survival action damages properly include compensation for decedent's pain and suffering until death and gross earnings from the time of injury until the time of death. Accordingly, we shall not discuss these elements of damage.

(1854). See generally Harper and James, *The Law of Torts*, §24.1 et seq. (1956). This condition was remedied in Pennsylvania by legislative enactments, the most recent of which, with regard to survival actions, are §§601, 602 and 603 of the Fiduciaries Act of 1949.[2] Those sections provide as follows:

§601 "All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."

§602 (in pertinent part) "The personal representative of a deceased party to a pending action or proceeding may become a party thereto . . . he shall have all the rights and liabilities of a party to the action or proceeding. . . ."

§603 "An action or proceeding to enforce any right or liability which survives a decedent may be brought by . . . his personal representative alone or with other parties as though the decedent were alive."[3]

---

[2] Act of April 18, 1949, P. L. 512, Art. VI, §601, §602, §603, 20 P.S. §320.601, §320.602, §320.603.

The statutes allowing recovery by enumerated beneficiaries for the wrongful death of a party are the Act of April 15, 1851, P. L. 669, §19, 12 P.S. §1601, and the Act of April 26, 1855, P. L. 309, §1, as amended, 12 P.S. 1602. We are not here concerned with a wrongful death proceeding and need not discuss the relationship of wrongful death and survival actions. See, inter alia, *Schwab v. P. J. Oesterling & Son, Inc.*, 386 Pa. 388, 126 A. 2d 418 (1956) ; *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A. 2d 659 (1942).

[3] These sections are the culmination of statutory enactments and amendments dating from the mid-19th Century and before. While this legislative history is interesting, it is not germane to the issue on this appeal. Some of it is contained in the opinions of the Court herein discussed. See *Radobersky v. Imperial Volunteer Fire Department*, supra; *Murray v. Philadelphia Transp. Co.*, supra; *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A. 2d 659 (1942). See also historical notes to §§35(a) and 35(b) of the Fiduciaries Act of 1917, 20 P.S., Chapter 3 Appendix, §§771 and 772.

It will be noted that §601 provides for the survival of both causes of action and proceedings. If it is the proceeding or suit which survives, §602 provides for the substitution therein of the decedent's personal representative. If it is the cause of action which survives, §603 provides that suit thereon may be brought by the decedent's personal representative. For convenience, we will use the terms "survival of cause of action" and "survival of suit" to distinguish the two types of survival situations.

It is plain from reading the texts of the above sections of the Fiduciaries Act and their antecedents that they did not and do not make any reference to the amount of damages recoverable under either of the two categories of survival actions. Accordingly, the proper measure of damages in each situation has been left to judicial decision.

The first case in which this Court addressed itself to the measure of damages in a case of this type was *Pennsylvania Railroad v. McCloskey's Admr.*, 23 Pa. 526 (1854), a case continued by a personal representative under the 1851 survival of suit statute. That case held that damages should consist of pain and suffering until death and loss of estimated earning power, without deduction, from the date of the injury for the period of life expectancy. This rule was reiterated in many subsequent opinions. See, e.g., *Kaczorowski v. Kalkosinski*, 321 Pa. 438, 184 Atl. 663 (1936); *McCafferty v. Pennsylvania Railroad*, 193 Pa. 339, 44 Atl. 435 (1899); *Maher v. Philadelphia Traction Co.*, 181 Pa. 391, 37 Atl. 571 (1897).

The same measure of damages was held, likewise, to apply in survival of cause of action situations. *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A. 2d 659 (1942). That case reasoned that both categories of survival actions were of equal status and deserving of the same standard of compensation. Noting that gross earnings

had uniformly been held to be the appropriate measure under the survival of suit statutes, the Court applied the same standard in the survival of cause of action situation then before it.

In 1948 this Court rendered its decision in *Murray v. Philadelphia Transp. Co., supra.* That case accords with *Pezzulli, supra,* only to the extent that it indicates that the measure of damages should be the same in both categories of survival actions. The *Murray* court, after carefully reexamining the established measure of damages mandated by a long line of judicial precedents, concluded that damages should be measured by loss of net, rather than gross, earnings. In so deciding, the Court noted that when a plaintiff is totally disabled as the result of an injury, but has not died, he is awarded his estimated loss of gross earnings, from which he must pay his own maintenance costs, so that "all that remains is his net earnings." If such a plaintiff dies, however, the expense of maintaining himself during the period of his life expectancy is eliminated. To include this predictable but unexpended maintenance cost in an award to the decedent's estate, said the Court, resulted in recovery which is more than compensatory.[4]

Although *Murray* was factually concerned with a survival of cause of action situation it is clear that the holding was intended to apply to both categories of survival actions. The opinion speaks generally in terms of an individual who is fully disabled due to another's negligence and subsequently expires because of the same injury, never differentiating as to the time that the suit was commenced. Credence is lent to this interpretation by Mr. Justice STERN's dissenting opinion, 359 Pa. 69, 76, which avowed that the majority had overruled 100 years of precedent (which prece-

---

[4] We note that the *Restatement of Torts*, §925, comment *b*, is in accord.

dents, it should be noted, had developed under the survival of suit statute).[5]

With this the state of the decisional law, this Court was then, three years later, called upon to decide *Radobersky v. Imperial Volunteer Fire Department, supra.* The opinion rejected the broad sweep of *Murray,* and limited the *Murray* net earnings rule to survival of cause of action cases; the Court in *Radobersky* held that the proper measure in survival of suit cases should continue to be the loss of gross earnings, undiminished by the maintenance factor.

Whether *Radobersky* or *Murray* be deemed the culprit, it is obvious that the continued coexistence of the rules of these two decisions serves to perpetuate an unjustifiable disparity in the measure of damages in survival actions, which are clearly intended to compensate the decedent's estate for precisely the same injury, decedent's total disability. As the case before us graphically illustrates, the damages issue has become so conceptualized as to result in a formalistic and paradoxical rule which varies the measure of damages dramatically depending upon whether or not the plaintiff has been able to reach the prothonotary's office before death has reached him. We can but agree that both *Pezzulli,*

---

[5] Justice STERN's dissent in *Murray* further opined that if, in fact, the majority opinion intended only to set a new standard of damages for the "survival of cause of action" cases, while leaving untouched the measure of damages under "survival of suit" cases, "such an escape would be merely from Scylla to Charybdis, for the wholly deplorable consequence would be to restore the practice which prevailed before the Act of 1937 of an unseemly race to the prothonotary's office to have a writ issued before the victim of an accident passed away so as to reap the fruit of a larger measure of damages." *Id.* at 80. A rather vivid illustration of the correctness of this prediction is to be found in *Freeman v. Giacomo Costa Fu Andrea,* 282 F. Supp. 525 (E.D. Pa. 1968), a case in which the complaint was filed within two hours following the injury and about five minutes prior to plaintiff's death.

*supra,* and *Murray, supra,* were correct in asserting that the measure of damages should be the same for both types of survival actions, leaving only to be decided what that measure should be.[6]

Certain general propositions concerning the law of damages, as contained in our case law, are helpful in making the choice before us. Clearly, damages are to be compensatory to the full extent of the injury sustained, but the award should be limited to compensation and compensation alone. See *McLane v. Pittsburgh Railway,* 230 Pa. 29, 79 Atl. 237 (1911); *Bank of Montgomery v. Reese,* 26 Pa. 143, 146 (1856). Expressed more concisely by Chief Justice GIBSON, speaking for the Court in *Forsyth v. Palmer,* 2 Harris 96, 97 (1850): "The rule is to give actual compensation, by graduating the amount of the damages exactly to the extent of the loss." Accord, *Kountz v. Kirkpatrick & Lyons,* 72 Pa. 376, 387 (1872), quoting Sedgwick on Damages, 4th Ed., pp. 28-9. Moreover, except in those cases where public policy allows punitive damages, the loss sustained should be compensated with the least burden to the wrongdoer consistent with the idea of fair compensation to the injured. *Massachusetts Bonding & Insurance Company v. Johnston & Harder,* 348 Pa. 512, 524, 35 A. 2d 721 (1943).

When a negligently injured party is fully disabled, his injury prevents him from supporting himself, from directing his earnings to the benefit of his family or other dependents, and from accumulating an estate. Quite properly, the injured plaintiff should receive as damages his total estimated future earnings undimin-

---

[6] In a case such as that before us, where the decedent was a minor, it is well settled that the recovery, no matter how defined, compensates the decedent's estate (other than for pain and suffering sustained prior to death) only for economic loss from the age of majority. *Pennsylvania Railroad v. Kelly,* 31 Pa. 372 (1858).

ished. But if such a plaintiff dies, his action, whether commenced or continued by his personal representative, is for the benefit of the estate. We cannot be blind to the reality that neither the deceased person nor his estate is burdened with the personal maintenance costs of the decedent. It thus becomes clear that the proper measure of damages designed to be compensatory must include a deduction based upon decedent's cost of personal maintenance. On the other hand, the estate should not be deprived of those earnings which are in excess of decedent's personal expenses, which funds could be distributed through decedents' estate in much the same manner that the decedent himself might have apportioned them. If we were seeking to compensate for the loss of life itself, it may be true that the best approximation of the value of that life could be cast in terms of an individual's personal maintenance costs. It has never been the law in Pennsylvania, however, nor do we here choose to hold that the loss of life itself is compensable.[7]

While it cannot be gainsaid that the *Murray* net earnings rule was a deviation from prior decisions, it was in accord with the principle, espoused by this Court, that fixed and formulated rules relating to the appropriate measure of damages in varying circumstances are not necessarily immutable, and must give way when it is determined that they are not setting a compensatory standard. See *Neuman v. Corn Exchange Bank,* 356 Pa. 442, 51 A. 2d 759 (1947). See also Laub, *Pennsylvania Trial Guide,* §339.23(1) (1959).

After carefully reviewing the relevant considerations, and the able briefs and arguments of the parties

---

[7] **The Superior Court in** *McCullough v. Philadelphia, Newtown & New York Railroad,* 81 Pa. Superior Ct. 318, 323 (1923) appropriately stated: "It is a mistake to suppose that recovery in such a case is for the death."

to this case, we have concluded that as applied to survival actions the economic loss to a decedent's estate should be measured by decedent's total estimated future earning power less his estimated cost of personal maintenance, reduced to present value. Accordingly, we specifically overrule the holding in *Radobersky v. Imperial Volunteer Fire Company, supra,* that the proper measure of damages in survival of suit cases is decedent's projected gross earnings. Reaffirming the reasoning of *Murray v. Philadelphia Transp. Co., supra,* we hold that in all survival actions, damages are properly to be measured by decedent's pain and suffering and loss of gross earning power from the date of injury until death, and loss of earning power less personal maintenance expenses from the time of death through decedent's estimated working lifespan.

The final issue to be decided is whether the "new" rule here enunciated should be applied to the case at hand or whether "there may be any equities that would warrant only prospective application in damage suits of the rule . . . which we announce today." *Simpson v. Union Oil Co.,* 377 U.S. 13, 24-25, 12 L. Ed. 2d 98, 107 (1964). The appellees argue that the circumstances of this particular case are so exceptional as to dictate a purely prospective application of the net earnings damages rule. We agree.

The suit resulting in this appeal was begun by complainant in February, 1962, one month before the minor decedent's death. Following five years of pretrial proceedings, a seven week trial took place in 1967. The transcript of that trial encompasses eight lengthy printed volumes in which testimony bearing upon the issue of liability is inextricably intertwined with testimony bearing upon the issue of damages. It appears that a retrial even though limited solely to the issue of damages would necessitate extensive and expensive dupli-

cation of evidence tracing the history of decedent's illness, medical history, pain and suffering, and, in addition, include expert testimony as to decedent's projected future earnings and maintenance expenses.

The ordeal of such further litigation might well have been foreclosed had the appellants utilized the simple expedient of requesting a special finding to determine that portion of the damages the jury allocated to decedent's probable future earnings. Had this been done, a remand would necessitate only a determination of decedent's projected maintenance expenses. Such a special finding might also have disclosed, as it is not unreasonable to suspect, that a substantial portion of the $200,000 verdict in favor of Mary Ann's estate was intended as compensation for the undoubtedly severe and extended pain and suffering to which the minor plaintiff was subjected.

The appellant asserts as reasons militating against a purely prospective operation of this decision, that our holding would then "be mere dictum",[8] and that such a ruling would discourage appellants from challenging established although inequitable rules of law.

As to the former complaint, we can only state that we expect that the holding of this case will be acted upon as any other decision of this Court. That we have the power as a constitutional matter to make such a prospective ruling is not contested by appellant. See *Linkletter v. Walker*, 381 U.S. 618, 629 (1965).

As to the second argument, it may be true that if prospective overruling were to be the rule rather than the exception, the result could be a chilling effect upon appellate proceedings. See Mishkin, *Forward, The Supreme Court, 1964 Term*, 79 Harv. L. Rev. 56, 60-62

---

[8] See von Moschzisker, "Stare Decisis in Courts of Last Resort", 37 Harv. L. Rev. 409, 426-27 (1924).

(1965).[9]  Suffice it to say that we do not treat this portion of our opinion as establishing a precedent for a general use of the prospective application technique. That the application is unusual and should be used but sparingly we candidly admit. We are mindful, however, of more than the deserving efforts of appellants in seeking renovation of an unsound or outmoded legal proposition; we look to the ultimate justice of the particular case before us. We must attempt to weigh the equities and determine the injustice caused by allowing the century-old *Radobersky* rule its one last gasp in a case where the justified expectations of the plaintiffs would otherwise be defeated.

With all this in mind we hold that the net earnings measure of damages adopted by this opinion shall not apply to the case at bar, but shall be operative henceforth in those cases wherein trial is commenced subsequent to the date of the filing of this decision.

Judgment affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent for the reasons expressed in my dissenting opinion in *Commonwealth v. Spencer,* 442 Pa. 328, 338, 275 A. 2d 299, 305 (1971), believing that this wholly prospective overruling is inappropriate and that the newly announced measure of damages should be applied at least to the instant case.

---

[9] See, among other literature on the subject, Levy, "Realist Jurisprudence and Prospective Overruling", 109 U. of Pa. Law Rev. 1 (1960) ; Note, "Prospective Operation of Decisions Holding Statutes Unconstitutional or Overruling Prior Decisions", 60 Harv. L. Rev. 437 (1947) ; Annotation, "Retroactive or Merely Prospective Operation of New Rules Adopted by Court in Overruling Precedent—Federal Cases," 14 L. Ed. 2d 992 (1966).

312

It will be remembered, for example, that in *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A. 2d 193 (1965), where this Court repudiated the charitable immunity doctrine, relief was afforded the particular litigant in that case. A further list of cases where we rejected prospective overruling is contained in *Falco v. Pados*, 444 Pa. 372, 282 A. 2d 351 (1971). Therefore, I would likewise here remand solely for the awarding of damages.