## Makripodis v. Merrell-Dow Pharmaceuticals

*John T. Bender,* for plaintiff.
*Raymond G. Hasley,* for defendant Rite-Aid Corp.

NARICK, *A.J.*, January 16, 1986 — This case was before the court for disposition of the preliminary objections in the nature of a demurrer of Rite-Aid Corp. We sustained objections and dismissed the complaint as to this defendant.

These preliminary objections raised the question of a pharmacist's liability for selling a prescription drug, containing no impurities and filled in accordance with the prescription, which allegedly had serious and harmful side effects. Bendictin is a nausea-relieving drug manufactured by defendant, Merrell-Dow Pharmaceuticals Inc., and used for treatment of morning sickness during pregnancy. It is available to consumers only upon prescription. Plaintiffs have alleged, and we accept upon demurrer,[1] that Anastos Makripodis was born with multiple birth defects resulting from his mother's use of Bendictin, upon prescription from her physician, while pregnant.

Dolly Makripodis purchased Bendictin from a Rite-Aid pharmacy. In bringing this action against Rite-Aid, plaintiffs do not allege that the prescription was misfilled or mislabeled by the pharmacy, or that the drug was contaminated, improperly compounded or in any other way other than what it purported to be. Rather, plaintiffs allege that Bendictin was defective because of its harmful side effects and because not accompanied by proper warnings, and was not fit for its ordinary purpose in breach of an implied warranty of merchantability.

Prescription drugs are not products made available to the public for general consumption, but are available only when, in the professional judgment of a physician, their use would be appropriate for a particular individual. See *Incollingo v. Ewing*, 444

---

1. E.g., *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976).

Pa. 263, 282 A.2d 206 (1971); *Leibowitz v. Ortho Pharmaceutical Corporation,* 224 Pa. Super. 418, 307 A.2d 449 (1973) (opinion in support of affirmance). The marketing and distribution of prescription drugs is highly regulated, both as to drug manufacturers, who must obtain federal regulatory approval of their products, and as to pharmacists, whose duties as the immediate sellers of such drugs are statutorily prescribed. See Pharmacy Act, September 27, 1961, P.L. 1700, § 1 (63 P.S. § 390-1, et seq.).

Counsel have not cited, and independent research has not disclosed, any Pennsylvania case law addressing the nature of a pharmacist's implied warranties as to prescription drugs. However, other jurisdictions have held that a pharmacist does not warrant a prescription drug's effectiveness or freedom from harmful side effects, but rather warrants only that the product sold will be the drug prescribed. See, e.g., *McLeod v. W. S. Merrill Co., Division of Richardson-Merrill Co.,* 174 So.2d 736 (Fla. 1965). We agree that where a prescription drug is properly filled with an unadulterated drug, a pharmacist has complied not only with his statutory duty, but also with normal commercial standards, and therefore cannot be held liable for breach of an implied warranty of merchantability.

Similarly, with regard to the adequacy of warnings or information accompanying a prescription drug, a pharmacist is responsible only for passing on to the consumer the warnings or directions he receives from the prescribing physician. See *Ingram v. Hook's Drugs Inc.,* ____ Ind.App. ____, 476 N.E.2d 881 (1985), and review of case law therein. The pharmacist is not in a position to issue independent warnings as to the use of prescription drugs as it is the prescribing physician and not the

pharmacist who both receives information as to the properties and risks of the drug and has the requisite knowledge of the individual patient-consumer's medical background. *Incollingo,* supra, at 288; *Leibowitz,* supra, at 431-432.

Further, a pharmacy cannot be held liable on the basis of inadequacies in the drug manufacturer's warnings. For a prescription drug to be safely used, the manufacturer's warnings as to risks· and dangers need not be supplied to consumers, but only to physicians who will be prescribing the drug. *Incollingo,* supra; *Leibowitz,* supra. Inadequate, erroneous or misleading information may make a drug unsafe for prescription by a physician who is relying on that information in forming a judgment as to the drug's suitability for a patient. But as the manufacturer's warnings are not intended to inform the consumer as to conditions of safe use, nor even to reach the consumer at all through the pharmacist who fills a prescription, any inadequacies therein do not impact on the safe use of the drug as sold by the pharmacy.

Finally, the federal regulatory framework is a limitation on strict liability for the sale of prescription drugs. "Because of the desirability of permitting drugs of proven value to be marketed despite known or suspected risks in said drugs, courts have uniformly held that 'a drug, properly tested, labeled with˙ appropriate warnings, approved by the. Food and Drug Administration, and marketed properly under federal regulation, is, as a matter of law, a reasonably safe product. Accordingly, a person claiming to have suffered adverse effects from using such a drug, unless he can prove an impurity or an inadequacy in labeling, may not recover·against the seller. . . .' *Lewis v. Baker,* 243 Ore. 317, 324, 413 P.2d 400, 404 (1966); see also, *Incollingo v. Ewing,*

444 Pa. 263, 282 A.2d 206 (1971)." *Leibowitz,* supra, at 433-434. Liability may yet be imposed on the drug manufacturer where, as plaintiffs have alleged in counts V through VIII of their complaint, the manufacturer has been negligent, reckless or fraudulent in obtaining federal approval of a prescription drug: ". . . a drug manufacturer may not escape liability by merely ignoring existing reports of side effects or dangers in the use of its product. Neither may a drug company fail to conduct tests and research to obtain such information. Where the particular case is such that there exists proof that the drug company was ignorant of existing facts or derelict in obtaining information readily ascertainable to it, a package insert or label will be considered inadequate, and liability accordingly imposed." *Leibowitz,* supra, at 434-435. But these theories of liability have no application to a pharmacy which has no role in the federal regulatory process.

In accordance with the foregoing, we have concluded that plaintiffs failed to state a cause of action against Rite-Aid Corp. An appropriate order has been entered.