## Swantek v. Prudential Property & Casualty Insurance Co.

*Robert C. Ward,* for plaintiffs.
*John M. Quinn Jr.,* for defendants.

LEVIN, *J.,* March 8, 1988—This matter comes before the court on defendants' motion for summary judgment.

Plaintiffs bought certain automobile insurance coverage from the above-named defendant, Prudential Property & Casualty Insurance Company from their agent, defendant Joseph Fries. Sometime thereafter, plaintiff wife was involved in an automobile accident with an uninsured driver. Under the terms of their insurance policy with Prudential Property & Casualty Insurance Company, plaintiff wife was able to recover approximately $30,000 in uninsured motorist benefits. Plaintiffs' uninsured motorists benefits, which covered two vehicles insured at $15,000 each, were stacked to arrive at $30,000.

Plaintiffs now contend that the coverage afforded them under the uninsured motorist portion of the policy was inadequate to compensate plaintiff/wife for her injuries. As such, it is plaintiffs' position that Prudential, by and through its agent, Joseph Fries,

acting on behalf of Prudential, was negligent for not completely reviewing all aspects of their insurance coverage giving due consideration to its availability, its costs and the financial resources of plaintiffs which would enable them to purchase certain insurance. Plaintiffs further contend, in view of the above, that defendants were negligent for not recommending plaintiffs purchase higher limits of uninsured motorists coverage. They also have alleged that the relationship between plaintiffs and defendant Joseph Fries was unique in that they relied heavily on his expertise in this matter. Based on this, they have brought the present claim against Prudential and Joseph Fries as Prudential's agent and its authorized representative.

In support of their motion for summary judgment, defendants argue that the language contained in the insurance policy was clear and unambiguous. They rely on *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 653 (1983) for the proposition that an insurance agent is not required to explain those provisions clearly set forth in an insurance policy. While this is a correct statement of the law, it does not address the issue found in this case. Rather, the question herein is whether the insurance agent has a duty to inform an insurance buyer of the availability of those insurance benefits of which the buyer is unaware; moreover, must the agent be cognizant of the buyer's financial condition when he is advising buyers of the available benefits? Defendants also rely on *Banker v. Valley Forge Insurance Company*, 363 Pa. Super. 456, 526 A.2d 434 (1987). Again, although this case mirrors the law enunciated in *Standard Venetian Blind Co. v. American Empire Insurance Co., supra,* it does not address the issues presently before the court. In fact, the court in

*Banker* stated that their decision was controlled by *Standard Venetian Blind Co. v. American Insurance Co.*

Initially, this court notes that there is a relative dearth of case law in this commonwealth regarding the liability of an insurance agent in this type of factual situation. However, a recent common pleas decision is enlightening. In *Peterson v. State Farm Insurance Co.*, 133 P.L.J. 437 (1985), Judge Wettick, in his well reasoned opinion, concluded that a cause of action exists where an insurance agent fails to make competent recommendations concerning the type of insurance coverage a plaintiff ought to secure. *Id.* at 438. Although this court is not bound by the decision of a sister jurisdiction, the analysis in the *Peterson* opinion is persuasive and applicable to the present case.

Specifically, the *Peterson* court opined that the standard of care required of those rendering professional services is set forth in the Restatement (Second) Torts §299(A):

*"Undertaking in Profession or Trade.* — "Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the.practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities."

The comments following section 299(A) define the word "skill" as intended by this section:

"It is that special form of competence which is not part of the ordinary equipment of the reasonable man, but which is the result of acquired learning and aptitude developed by special training and experience. All professions, and most trades, are necessarily skilled, and the word is used to refer to the

special competence which they require." Restatement (Second) Torts §299, comment a.

Comment b of this section applies the standard of care iterated in section 299 to any person who undertakes to render services to another in the practice of a profession. This standard has been followed by the Pennsylvania appellate courts in deciding those cases predicted upon the negligence of professionals. See generally, *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971); *Bloomburg Mills Inc. v. Sandoni Construction Co.,* 401 Pa. 358, 164 A.2d 201 (1960); *Robert Wooler Co. v. Fidelity Bank,* 330 Pa. Super. 523, 479 A.2d 1027 (1984). As noted by the court in *Peterson v. State Farm Insurance Co., supra,* no appellate court has specifically applied the aforestated standard of care to insurance agents. That fact, however, would not preclude its application in just such a case. Consistent with the comments to section 299, an insurance agent holds him or herself out to the public as one being experienced and knowledgeable in a field that is increasingly becoming complicated and specialized. This is borne out by the regulations governing insurance agents in Pennsylvania 40 Pa. S.A. §231 et seq. In order to sell insurance in this state, the agent must obtain a license, and if he or she does not, then the agent who continues to sell insurance without a license is subject to certain sanctions including a monetary penalty. 40 Pa. S.A. §231, et seq., 40 Pa. S.A. §278.

To become a licensed agent, an applicant must submit certain written interrogatories upon which the insurance commissioner will determine the fitness of the applicant to sell insurance. 40 Pa. S.A. §233. That section states further: "When the insurance commissioner is satisfied that the applicant is worthy of a license, and that he is reasonably famil-

iar with provisions of the insurance law of this commonwealth, he shall issue a license . . ." 40 Pa.S.A. 2 §233(2). It is obvious from the statutes that the commonwealth deems an insurance agent to be a professional skilled in the business of insurance matters.

Our appellate courts have held that the focal point of an insurance transaction is the reasonable expectation of the insured. See *State Auto Insurance Assoc. v. Anderson,* 365 Pa. Super. 85, 528 A.2d 1374, (1987) citing to *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 388 A.2d 1346 (1978). Those expectations are, in large part, created and perpetuated by the complexity of the insurance industry itself. *Id.* This concept underscores the reason for recognizing a duty to advise on behalf of an insurance agent.

As did the court in *Peterson,* this court now concludes that an insurance agent is held to the standard of care found in section 299 of the Restatement (Second) of Torts, and given that standard the agent has a correlative duty to advise insureds of the availability of other types of insurance benefits. Moreover, a cause of action exists where the agent allegedly breaches this duty. A finding that the plaintiffs herein have put forth a valid cause of action does not end the court's present inquiry. The court must now evaluate the merits of defendants' motion for summary judgment.

A court will grant summary judgment in those cases where the evidence of record, taken in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Pa.R.C.P. 1035, *Thorsen v. Iron & Glass Bank,* 325 Pa. Super. 135, 476 A.2d 928 (1934).

A review of the record in this case indicates the existence of a number of factual questions which

must be resolved. Certain questions surround the relationship the plaintiffs had with the insurance agent, and what they expected from the relationship. It is not apparent from the record whether the agent advised and counselled the plaintiffs or to what extent plaintiffs relied on the agent. These questions, among others, need to be addressed before the court can grant summary judgment. In any event, the question of whether the agent breached his duty to plaintiffs is for the jury and as such, defendants' motion for summary judgment must be denied.

The case of *State Farm Mutual Automobile Insurance Co. v. Vance,* no. 83-279 (Erie, W.D. Pa.) is not dispositive of the instant matter for two reasons. Initially, and technically, a federal court's interpretation of state law is merely persuasive authority and not binding on state court's decisions. Secondly, and substantively, the *Vance* case is distinguishable on its facts. The primary difference between *Vance* and the case at hand is that in the *Vance* case, the parties were afforded the opportunity at trial to offer proof of their claim, but failed to adequately do so. The court therein did not make a determination regarding the duty to advise owed to another by an insurance agent. Reading the *Vance* case in another light, the district court was not ruling out the existence of such a cause of action but rather the ruling concerned the adequacy of proof. For the court to follow the dictates of *Vance* at this time would be premature.

In addition to the above stated reasons, this court makes the following observations in support of the decision to deny defendants' motion for summary judgment. Defendants assert, in part, that they should not be held liable to plaintiffs because plain-

tiffs were simply shopping for insurance and only asked the defendants for a quote. This, in itself, should not relieve defendant Joseph Fries of his professional duty to plaintiffs. This situation is analogous to one where a person seeks legal advice from one attorney and then contacts another attorney for advice on the same matter. This does not relieve either attorney from acting in a professional and responsible fashion.

In penning this opinion, the court must view the everchanging and growing duties and responsibilities of duly licensed professional parties in today's society. In the early history of our country, there were few licensing requirements applicable to professionals. To illustrate, one of our legendary Revolutionary heroes, Paul Revere, was not only a silversmith, but also practiced dentistry. He did this without any qualifications or training in dental arts.[1] This would not be tolerated in today's society. The court notes that times change as do the rights and duties of the parties. As Thomas Jefferson stated: "In a free society, nothing is unchangeable but the inherent unchangeable rights of man." (Taken from a speech given by Chief Justice of the State of New York Sol Wachtler at the Chautauqua Conference on the American Constitution in August, 1987.) That statement captures the evolving and growing process of placing added responsibility on parties toward their fellow person.

---

1. The advertisement of Paul Revere found in the Boston Gazette and Country Journal on July 30, 1770, stated: "He has fixed some hundred of Teeth and he can fix them as well as any Surgeon-Dentist who ever came from London, he fixes them in such a Manner that they are not only an Ornament, but of real use in Speaking and Eating." *Hidden History,* Daniel J. Boorstin, Harper & Row, Publishers, 1987, p. 28.

This same concept was discussed by one of our most famous Supreme Court Justices, Benjamin Cardozo. In a speech given to the graduating class of Albany Law School in 1925, he had this to say: "[Y]ou will study the life of mankind for this is the life you must order and, to order with wisdom, must know. You will study the precepts of justice, for these are the trusts that through you shall come to their hour of triumph." This speech reveals Justice Cardozo's concern that we must study the principles, which would set forth the responsibilities and duties of the past but then apply those principles to the present to ensure true justice. Also, this same tenet was recently expressed by the Honorable Sol Wachtler, Chief Justice of New York in a speech given at the Chautauqua conference in the summer of 1987:

"I believe that we make a serious mistake to believe that the past has done its work for the present, that past generations have separated right from wrong and good from evil and that one generation can protect the rights of another. That is not the case. One generation can never protect the rights of another and liberty, which is the cornerstone of our democracy, must be preserved by each generation."

The above learned men teach us through their pronouncements based on their wisdom and understanding of the law that as our rights become more sophisticated, so do our duties. It is therefore consistent to expect that as one has a basic right to practice in a profession, that right carries with it a corresponding duty. This relationship of rights and corresponding duties is especially vivid in the present case. An insurance agent is no longer one who simply sells insurance and collects premiums. He is in effect a person on whom the insured relies for advice both as to the amount of the policy and all

financial aspects of same, in no way can a duly licensed insurance agent be compared to a clothing salesman who sells a shirt with no further obligation connected therewith. An insurance agent has been given this added responsibility and obligation by virtue of the position he holds and the license he has received as illustrated by the testimony of his superior[2] and by the legislation enacted by the legislature of the Commonwealth of Pennsylvania.

Therefore, in the instant case, the court must allow a jury to be the arbiter of the duties and responsibilities of an insurance agent not by those standards that existed at the time of Paul Revere but rather by those that are presently in place.

## ORDER

And now, this March 8, 1988, it is hereby ordered, adjudged and decreed that the motion for summary judgment filed by defendants is hereby denied.

---

2. At the deposition of one of Prudential Insurance Company's local managers, Charles Reams, he described the responsibility of an agent toward the client: ". . . to sit down, and talk with the insured, find out what the insured's needs are, and then try to develop programs that will satisfy those needs within the realm of the client's ability to pay."