## Solt v. Sandoz Pharmaceuticals Corporation

300

*William Douglas,* for plaintiff.
*Howard M. Cyr,* for defendant Sandoz.
*Joseph Hafer,* for defendants Michael Posner and Bettina Ohl.
*Kristen Bauch,* for defendant Gettysburg Hospital.

SPICER, *P.J.*, December 15, 1994—Plaintiff's complaint, filed September 20, 1994, alleges that she suffered injuries as a result of taking a prescribed medication manufactured by Sandoz Pharmaceuticals Corporation. She states that her doctors prescribed the medication, Parlodel, to suppress lactation following the birth of her third child on December 9, 1993. Problems began with headaches, and progressed to blurred vision, shivering and twitching in her arm. Following her admission

into a hospital, she was found to suffer from injuries, including hemorrhaging and seizures.

She has sued Sandoz on theories of negligence and strict liability, Restatement (Second) of Torts §402A. Sandoz has demurred, raising issues which we must address. One objection, however, which relates to correct identification will be remedied simply by directing that captions and pleadings reflect Sandoz as "Sandoz Pharmaceuticals Corporation."

Count I, which alleges strict liability, generally states:

"(21) The said medication was defective in either its design or manufacture.

"(22) The defendant Sandoz gave no warnings of the defective design and/or manufacture to the user of the product.

"(23) The medication in question may not have functioned properly in the recommended dosage."

Count II, sounding in negligence, alleges 11 instances of negligence which range from failure to give adequate warnings to providing false or misleading information to the U.S. Food and Drug Administration, withholding information from that agency and failing to conduct proper testing. Plaintiff alleges that defendant acted "negligently, recklessly, wantonly and willfully."

Plaintiff seeks punitive damages.[1]

Sandoz's demurrers are based upon its contention that it cannot be held liable on a products liability claim and that allegations as to negligence are legally insufficient. Further, it argues that allegations of willful,

---

1. Other defendants in this action include plaintiff's doctor and the hospital. Preliminary objections filed by these defendants were withdrawn when plaintiff withdrew her request for punitive damages as to those other defendants.

wanton and/or reckless conduct have no factual support and cannot support an award of punitive damages.

Preliminary objections in the form of demurrers may be sustained only in clear cases, when it appears that plaintiffs are not entitled to recover as a matter of law. Factual allegations must be read in a light most favorable to plaintiff and they must be given the benefit of all favorable inferences deducible therefrom. *Cafazzo v. Central Medical,* 430 Pa. Super. 480, 635 A.2d 151 (1993).

Since we deal with a prescription drug, we must consider Restatement (Second) of Torts §§402A and 388. It is in the context of those two sections that appellate cases have discussed causes of action involving pharmaceutical companies. *Hahn v. Richter,* 427 Pa. Super. 130, 628 A.2d 860 (1993), *allocatur granted,* 537 Pa. 650, 644 A.2d 736 (1994). As our later discussion will indicate, and the granting of allocatur in that case may confirm, there is far from a unanimity of opinion as to the meaning and scope of those two sections.

Section 402A reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The source of controversy in this area is comment k, which reads:

"k. *Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has

undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

An en banc Superior Court held, in *Hahn v. Richter, supra*, that comment k should be read to exclude all prescription drugs. The dissent, authored by Judge Del Sole, pointed out that only certain medications, such as experimental drugs, were meant to be excluded. A concurring opinion, authored by Judge Cavanaugh, advanced the view that comment k could be read to support both the majority and dissent. This synthesis suggested that Restatement language is not written in stone, lacks statutory effect and must be read in light of appellate authority in Pennsylvania. In this view, Judge Cavanaugh found support in Supreme Court's decision in *Coyle v. Richardson-Merrell Inc.*, 526 Pa. 208, 584 A.2d 1383 (1991).

The trial court, in *Hahn*, refused to submit a strict liability cause of action to a jury. However, negligence was submitted and resulted in a verdict for Upjohn Company, manufacturer of a prescription drug, Depo-Medrol. There was little discussion about jury instructions regarding negligence, but it can be assumed, we think, that the negligence count involved Upjohn's failure to notify physicians that the drug was not approved for intrathecal administration or that such administration could cause arachnoiditis.[2]

Other arguments between the majority and the dissent make this area even more interesting. The majority observed:

_____

2. An intrathecal injection is one made directly into the spine. The drug was approved for intra-articular or soft tissue administration. Arachnoiditis is a scarring of the arachnoid nerves in the lower back. Plaintiff in our case has alleged that Parlodel caused extensive bi-hemispheric subarachnoid hemorrhage.

"In *Incollingo v. Ewing,* our Supreme Court categorized chloromycetin, a prescription drug which had been on the market for more than 30 years at time of its decision as a product which was unavoidably unsafe but justifiably marketed and used notwithstanding a medically recognizable risk. The court further stated that the strict liability rule of Restatement 402(A) is not applicable in a case involving a prescription drug and that the standard of care required for a manufacturer of prescription drugs is set forth in section 388 of the Restatement (Second) which concerns the liability of a supplier of a chattel known to be dangerous for its intended use." *Hahn v. Richter, supra* at 141, 628 A.2d at 865. (footnotes omitted)

"The majority wrongly concludes that a manufacturer of a prescription drug cannot be strictly liable under 402A, and in support of its ruling relies upon language found in past cases. It begins with reference to our Supreme Court's decision in *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971). The majority interprets footnote nine in *Incollingo v. Ewing, supra* as the basis for its statement 'that the strict liability rule of Restatement 402(A) is not applicable in a case involving a prescription drug and that the standard of care required for a manufacturer of prescription drugs is set forth in section 388 of the Restatement (Second) which concerns the liability of a supplier of a chattel known to be dangerous for its intended use.' Majority opinion at 865. The majority, however, neglects to add that strict liability was not pled in *Incollingo,* rather the Supreme Court stated repeatedly throughout the opinion that that complaint against the drug manufacturer claimed that it 'negligently and carelessly manufacture[d] the said drug' *Id.* at 285, 282 A.2d at 218, and that the manufacturer of the drug 'negligently failed

to warn ... of the dangerous effects of the drug, failed to perform tests on the drug, and failed to take necessary precautions to avert the injuries complained of.' *Id.* at 269, 282 A.2d at 211. The *Incollingo* court's notation in footnote nine advising that the strict liability rule of section 402A was not applicable to its decision, was necessary because the case was pled as a negligence case and recovery based upon strict liability was not sought." *Hahn v. Richter, supra* at 155-56, 628 A.2d at 873. (footnotes omitted)

We cannot predict what the Supreme Court will do when it considers the case. The decision in *Coyle, supra,* would indicate that the en banc decision will be affirmed.[3] Supreme Court certainly expressed no doubts that it had established an exception, in *Incollingo v. Ewing, supra,* to all prescription drugs.

Although Judge Del Sole chided the majority in *Hahn* about reintroducing negligence principles into the field of products liability, until the Supreme Court reverses that decision, it seems clear that Sandoz's liability, if any, must rest on negligence. Drug manufacturers are required to give warnings to physicians who are obligated to be fully aware of: 1) characteristics of the drug; 2) the amount that can be safely administered; 3) different medications the patient is taking. The physician, then, must advise the patient of side effects and how and when to take the medicine. See also, *Taurino v. Ellen,* 397 Pa. Super. 50, 579 A.2d 925 (1990).

Whether dealing with sections 402A or 388 of the Restatement, cases already discussed make it clear that warnings are for doctors, not patients. The difference

---

3. The rule of strict supplier liability was not extended to pharmacist. The court said that warnings are intended for doctors, not patients, in drug cases.

between strict liability and failure to give an adequate warning under section 388 is that the latter involves at least imputable knowledge. To be liable for negligence, a drug manufacturer must know, or be charged with the duty of knowing, of the particular risk involved in the case. Under section 402, the reasons for failure to warn are irrelevant and a manufacturer may be liable even though ignorant of the risk.

It is the sense of this court that Pennsylvania law does not permit recovery under a theory of strict liability in any case involving a prescription drug. The demurrer to Count I is sustained.

The negligence count (II) contains several allegations that are irrelevant because of the state of the law. For example, paragraph 31(b) asserts that Sandoz was negligent by failing to adequately warn the patient; c) by failing to design the product to be adequate and safe for its intended use; f) in prescribing, encouraging to be prescribed the medication for the suppression of lactation; i) by failing to provide adequate warning or informed consent to potential users. These allegations assume: 1) strict liability; 2) warranty for a particular purpose; 3) a duty to inform the patient, as opposed to the physician; 4) liability based upon assault and battery; and 5) liability based upon fraudulent misrepresentation.

There may be problems which should await a more extensive record. For example, paragraph 31(h) alleges inadequate testing. Although federal regulation of drugs does not necessarily preempt state action, *White v. Weiner,* 386 Pa. Super. 111, 562 A.2d 378 (1989), cases already discussed have made it clear that the FDA is charged with the responsibility of regulating prescription drugs. Frankly, we cannot imagine an appellate court upholding

an award of damages based upon a standard of testing stricter than that required by the federal agency.

Paragraph 31(j) alleges that Sandoz "willfully failed to recall its product from the general public ... when defendant knew or should have known of hazards and side effects of its normal use and recommended dosage."

Statements like this confuse an action based on negligence with products liability and, in fact, take strict liability even further than the Restatement authorizes.

Paragraph 31(i) alleges that Sandoz "failed to provide warnings and other information to the U.S. Food and Drug Administration," among other things. The allegation is pertinent in determining whether Sandoz knew or should have known about risks. It is not, however, a basis for negligence standing alone. As noted *supra,* the paragraph goes on to introduce concepts of misrepresentations and assault and battery.

In short, although the count may adequately plead an action under the Restatement §388, allegations are almost impossible to sort out. To simplify matters, we prefer to sustain the demurrer and direct plaintiff to replead.[4]

While this temporarily takes care of the claim for punitive damages, we also think it wise to point out that such damages are reserved for exceptional cases, *Shriver v. Marvelous Marv & Co. Inc.,* 35 Adams Leg. J. 211 (1993). Ordinary negligence is insufficient and conduct must be especially egregious. *Martin v. Johns-*

---

4. Paragraphs 31(a) through (j) are definitely objectionable in the manner presented. For example, (j) alleges a number of things which, taken by themselves, may indicate negligence. However, the subparagraph concludes with "thereby failing to provide adequate warning or informed consent to potential users." Although subparagraph (h) may state a cause of action, it lacks specificity without other allegations. As we have pointed out, negligence required knowledge or reason to know of the particular risk involved.

*Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985); *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984).

Although plaintiff has characterized Sandoz's actions as negligent, reckless, wanton, and willful, we will ignore such legal conclusions unless factual allegations justify them. See *Maguire v. Ohio Casualty Insurance Co.,* 412 Pa. Super. 59, 602 A.2d 893 (1992).

The only allegation that comes close to justifying such damages is that Sandoz withheld information from the Federal Drug Administration. We are not told what information was withheld and Sandoz has not sought a more specific complaint. We hope we are not called upon to review FDA proceedings at trial but note that the former head of that agency appeared as a witness for *Hahn v. Richter, supra.*

For reasons expressed in this opinion, the attached order is entered.

### ORDER

And now, December 15, 1994, preliminary objections are sustained to Count I, Count II, and Count VII. Plaintiff may file an amendment to the complaint as to Counts II and VII only within the next 20 days. All pleadings are amended to correctly identify defendant as Sandoz Pharmaceuticals Corporation.