526 A.2d 434

**Walter and Margaret BANKER, Individually and as Parents and Natural Guardians of Sharon Banker, a Minor, Appellants,**

**v.**

**VALLEY FORGE INSURANCE COMPANY, Wagner Agency, Inc., and Bernard Rafferty, Appellees.**

Superior Court of Pennsylvania.

Argued March 31, 1987.

Filed May 27, 1987.

Pamela G. Shuman, Harrisburg, for appellants.

Bruce M. Mundorf, State College, for Valley Forge, appellee.

Christian S. Erb, Jr., Harrisburg, for Wagner, appellee.

Before WIEAND, BECK and CERCONE, JJ.

WIEAND, Judge:

In this case an insured requested his broker to obtain an endorsement to his no-fault, automobile insurance policy which would reduce his premium by making his personal injury protection excess coverage over his private health care insurance. Several years after the endorsement had been issued, the insured's daughter was rendered a quadriplegic as a result of an automobile accident. The insured commenced an action to compel the insurer to pay past and future medical bills even though the health care insurance had not been exhausted. The basis for the action was an averment that the full effect of the endorsement had not been explained to him. The trial court sustained the insurer's preliminary objections in the nature of a demurrer and entered judgment in its favor. The insured appealed. We affirm.

In January, 1981, Valley Forge Insurance Company (Valley Forge) renewed an automobile insurance policy which had been issued to Walter Banker in accordance with Pennsylvania's No-fault Motor Vehicle Insurance Act.[1] In September, 1981, Banker's wife, Margaret Banker, contacted Bernard Rafferty, an agent employed by the Wagner Agency, Inc., and asked if it were true that the premiums of the policy could be reduced by making the family's private medical insurance the primary source of coverage in the

---

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq., *repealed by* Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

event that a family member were to sustain injuries in an automobile accident. Rafferty responded affirmatively. Therefore, on September 29, 1981, Banker signed an application for an endorsement to his automobile policy which would provide that his personal injury protection was to be excess over any other hospital or medical expense coverage. The endorsement was issued and caused a subsequent reduction in the premiums paid by Banker. The endorsement was made a part of the policy and was listed, in bold-faced lettering, in the Schedule of Endorsements in the policy which the Bankers received from Valley Forge.[2]

On February 23, 1983, Sharon Banker, the insured's minor daughter, was rendered a quadriplegic by injuries received in an accident involving a motor vehicle in which she had been riding as a passenger. The Bankers incurred substantial medical expenses and gave notice to Rafferty and the Wagner Agency, which, in turn, notified Valley Forge. Because of the excess coverage endorsement, however, the Bankers were instructed to submit their medical bills to their private health care insurer and were told that Valley Forge would pay only those bills for which the primary health care carrier denied coverage.

The Bankers commenced an action against Valley Forge and also against Rafferty and the Wagner Agency in which they sought to invalidate the excess insurance endorsement and compel payment of the medical bills incurred on behalf of their daughter. They alleged in an amended complaint that Valley Forge had failed to inform them that except for the endorsement they could have recovered from both insurers or retained the private health insurance lifetime maximum benefits for non-accident related bills. Valley Forge filed preliminary objections in the nature of a demurrer to the complaint. It argued that the endorsement which the insured had requested more than two years before the accident was clear and unambiguous and that under the

---

2. The endorsement provided
   "Personal Injury Protection is excess over any other Hospital/Medical Expense Coverage."

circumstances it had no duty to offer an explanation of the endorsement to its insured. The trial court agreed and sustained the preliminary objections.

In *DeAngelo v. Fortney*, 357 Pa.Super. 127, 129, 515 A.2d 594, 594–595 (1986), the law was summarized as follows:

> "Upon demurrer, a reviewing court must regard as true all well pleaded facts and reasonable inferences deducible therefrom." *Klein v. Raysinger*, 504 Pa. 141, 144, 470 A.2d 507, 508 (1983). Conclusions of law, however, do not bind a reviewing court. *Cunningham v. Prudential Property and Casualty Insurance Co.*, 340 Pa.Super. 130, 133, 489 A.2d 875, 877 (1985). It is in this light that we examine the complaint to determine whether it sets forth a cause of action which, if proved, would entitle the plaintiff to the relief sought. *Id.* If the complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained. *Id.; Rubin v. Hamot Medical Center*, 329 Pa.Super. 439, 441, 478 A.2d 869, 870 (1984).

See: *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 503–504, 267 A.2d 867, 868 (1970); *Jamison v. City of Philadelphia*, 355 Pa.Super. 376, 379–380, 513 A.2d 479, 480 (1986).

In the instant case, the Bankers argue that although the language of the endorsement itself was clear and unambiguous, the collateral effects thereof were not known to them. These collateral consequences, they argue, should have been explained. We disagree.

In *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983), Venetian Blind had purchased a general liability policy from the insurance company. The policy provided liability insurance coverage for all sums which Venetian Blind became legally obligated to pay by way of damages. Conspicuously displayed in the exclusion section of the policy, however, was a statement that the policy did not apply to property damage to Venetian Blind's own property or to work performed by or on behalf of Venetian Blind. During the effective period

of the policy, a portico which had been installed on the property of a customer by Venetian Blind's agent collapsed, causing damage to the customer's property. Venetian Blind made a claim under the policy for the cost of the customer's damaged property and the cost of the portico itself. The insurer agreed to indemnify the customer for the cost of the damaged property which had been stored beneath the portico but refused to tender payment for the cost of the portico itself. Venetian Blind filed a petition for declaratory judgment, contending that the exclusion was unenforceable because Venetian Blind had not been made aware of and had not understood the effect of the exclusion. The trial court agreed and, on appeal, this Court affirmed. The Supreme Court reversed, holding "that where ... the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation *or that he did not understand it."* *Id.,* 503 Pa. at 307, 469 A.2d at 567 (emphasis added).

This holding was clarified by the Supreme Court in *Tonkovic v. State Farm Mutual Automobile Insurance Co.,* 513 Pa. 445, 521 A.2d 920 (1987). There, Tonkovic had applied for an insurance policy to provide disability coverage which would enable him to make his mortgage payments in the event of an injury, without regard to where the injury might occur or whether Tonkovic might be eligible for worker's compensation benefits. Tonkovic was subsequently injured on the job and made a claim for disability benefits. His claim was denied by the insurance company because the policy which had been issued to Tonkovic specifically excluded coverage for injuries incurred in the work place if worker's compensation benefits were available. Tonkovic instituted an action in assumpsit to recover benefits. He averred that he had never received a copy of the policy and had never been advised by State Farm of the variance between the coverage for which he had applied and that which he had received.

Trial by jury was held, and a verdict was returned in favor of Tonkovic. On appeal, this Court reversed and remanded for a new trial, relying on the decision in *Standard Venetian Blind Co. v. American Empire Insurance Co., supra.* The Supreme Court granted allocatur and reversed. It held that *Venetian Blind* was factually dissimilar and, therefore, inapplicable. The Court explained that in *Venetian Blind*

[t]he insurance policy issued ... was what it purported to be, and what the insured purchased, a general liability policy. The purpose of a general liability policy is to protect an insured from claims made by third parties for injuries to their person or property resulting from the policy-holder's negligence. In such a case, it is patently unreasonable for an insured to contend that he should be paid for *his own* property damage loss from a liability policy. Neither the negotiations for benefits nor the type of coverage sought would lead an insured to believe that a liability policy would provide insurance coverage on one's own property. Based on these facts and circumstances, we determined that the insured could not avoid the consequences of the exclusion provision by asserting that he failed to read the policy, or that he did not understand it.

.... Contrary to the facts in *Venetian Blind,* [Tonkovic] specifically requested a type of coverage that would have protected him in this instance, but was issued a policy quite different from that which he requested. Also contrary to *Venetian Blind,* [Tonkovic's] claim [was] that he *never received* a copy of the policy and had never been advised of a change in the coverage that he had originally applied for, *not* that he received it, but failed to read it.

....

We find a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage

that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for. When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made. The burden is not on the insured to read the policy to discover such changes, or not read it at his peril.

*Tonkovic v. State Farm Mutual Automobile Insurance Co., supra,* 513 Pa. at 451–455, 521 A.2d at 923–925 (emphasis in original).

The instant case is controlled by *Standard Venetian Blind Co. v. American Empire Insurance Co., supra.* Like *Venetian Blind,* the insured in the instant case received the precise policy endorsement which he had requested. This endorsement plainly and unambiguously stated: "Personal Injury Protection is excess over any other Medical Expenses Coverage." It is difficult to perceive a clearer provision. When the insured requested that an excess coverage endorsement be added to his policy, he neither requested the insurer's advice on the advisability of the requested change nor indicated that he was unaware of the collateral consequences of the change. His request was for a specific change. He and his wife explained that they desired to decrease the nature of their coverage in exchange for a reduction in the amount of premiums which they would be required to pay. They received precisely what they requested. Unlike *Tonkovic v. State Farm Mutual Automobile Insurance Co., supra,* the insurer did not unilaterally insert an unanticipated provision in the policy. Under these circumstances, the law will not permit the insured to avoid the consequences of the endorsement which he specifically requested by contending that he failed to understand the full effect thereof.

In *Hess v. Allstate Insurance Co.,* 614 F.Supp. 481 (W.D. Pa.1985), *aff'd,* 804 F.2d 1248 (3d Cir.1986), the insured had purchased a no-fault automobile insurance policy from Allstate. The policy contained a "coordination of benefits" endorsement which provided that the insured's health insur-

ance would be the primary source of benefits in case of an accident, with the automobile insurance policy to provide coverage only for additional costs. After the insured had been seriously injured in an automobile accident, he brought suit against Allstate in an attempt to recover reimbursement for his medical expenses. He argued that the endorsement was ineffective because Allstate had failed to inform him of (a) the availability of a double recovery of medical payments arising both from Allstate and the insured's health care provider if no coordination of benefits had been made; and (b) the possibility that medical expense benefits paid under the insured's health care insurance as a result of an automobile accident might exhaust the limits of coverage under that policy. Summary judgment in favor of Allstate was granted by the district court. Relying on *Standard Venetian Blind Co. v. American Empire Insurance Co., supra,* the Court held that the language of the limitation was clear and unambiguous and, therefore, its effect could not be avoided on the ground that the insurer had failed to explain its meaning to the insured. The Court said: "Under Pennsylvania law, the insurer would only have to prove that the insured received a copy of the policy containing the clear and unambiguous exclusionary language in order to prevail.... [M]ere allegations of failure of the insurer to explain a clearly-worded limitation are legally insufficient." *Hess v. Allstate Insurance Co., supra* at 487. The Court added: "Finally, we reject [the insured's] argument that Allstate was under a duty to explain purely hypothetical effects on [the insured's] other medical insurance policies. Where the limitation is clearly worded and unambiguous, the language of the policy controls." *Id.*

We agree with the federal district court's analysis and hold that where, as here, the policy provision is clear and unambiguous, neither the insurer nor its agents have a duty to explain all of the hypothetical consequences which may result from an excess coverage endorsement which the insured has specifically requested. The trial court correctly

held that the amended complaint failed to state a cause of action against Valley Forge.

If it is evident that a pleading can be cured by amendment, a court may not enter a final judgment, but must give the pleader an opportunity to file an amended complaint. *Stevens v. Doylestown Building & Loan Assoc.,* 321 Pa. 173, 183 A. 922 (1936). This is a positive duty of the court and not a matter of discretion. *Framlau Corp. v. Delaware County,* 223 Pa.Super. 272, 299 A.2d 335 (1972). However, if it clearly appears that a defective complaint cannot be cured, a demurrer to it and dismissal of the action is proper. *Seitz v. Fulton National Bank,* 325 Pa. 14, 188 A. 569 (1936).

*Mace v. Senior Adult Activities Center,* 282 Pa.Super. 566, 569, 423 A.2d 390, 391 (1980). See: *Carlino v. Whitpain Investors,* 499 Pa. 498, 505, 453 A.2d 1385, 1388 (1982). Appellants did not disclose to the trial court and have not enlightened us with alternative facts which would support a cause of action against Valley Forge. The trial court under these circumstances was not required to afford them an opportunity to file a second amended complaint.

■ The trial court also dismissed appellants' amended complaint against the insurance brokers who had obtained for appellants the policy of insurance and the excess insurance endorsement thereto. This was error. Rafferty and the Wagner Agency, although having been served with the amended complaint, did not file preliminary objections thereto or answer the complaint on the merits. They requested and received an extension of time within which to file a pleading, but they had not filed the same when Valley Forge's preliminary objections were decided. With respect to Rafferty and the Wagner Agency, therefore, there was nothing before the trial court which required decision. For the court to dismiss the complaint against them sua sponte was improper. It may be, of course, that appellants will ultimately be unable to plead or prove a legally cognizable cause of action against the brokers, but that is a matter separate from the cause of action alleged against Valley Forge and must await further proceedings.

The order sustaining preliminary objections in the nature of a demurrer to the complaint and entering judgment in favor of Valley Forge Insurance Company is affirmed. The order entering judgments in favor of Bernard Rafferty and the Wagner Agency, Inc. is reversed, and the counts of the complaint against those defendants are remanded for further proceedings. Jurisdiction is not retained.