585 A.2d 504

**Walter and Margaret BANKER, Individually and as Parents and Natural Guardians on Behalf of Sharon Banker, a Minor, Appellants,**

v.

**VALLEY FORGE INSURANCE COMPANY, Wagner Agency, Inc. and Bernard Rafferty.**

Superior Court of Pennsylvania.

Argued Jan. 17, 1990.

Filed Jan. 22, 1991.

368

Richard C. Angino, Harrisburg, for appellants.

Karen S. Cooney, Harrisburg, for Bernard Rafferty, appellee.

Before ROWLEY, FORD ELLIOTT and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the order below granting motions for summary judgment filed by appellees Bernard Rafferty and the Wagner Agency, Inc. Appellants Walter and Margaret Banker contend that the trial court erred in concluding that

their cause of action was barred by this Court's prior decision in *Banker v. Valley Forge Ins. Co.*, 363 Pa.Super. 456, 526 A.2d 434 (1987), *alloc. denied* 518 Pa. 623, 541 A.2d 1135 (1988) (hereinafter *Banker I*). For the reasons set forth below, we agree and, accordingly, we reverse the order below and remand for proceedings consistent with this Opinion.

The facts giving rise to the litigation below were summarized in *Banker I*, as follows:

In January, 1981, Valley Forge Insurance Company (Valley Forge) renewed an automobile insurance policy which had been issued to Walter Banker in accordance with Pennsylvania's No-fault Motor Vehicle Insurance Act. In September, 1981, Banker's wife, Margaret Banker, contacted Bernard Rafferty, an agent employed by the Wagner Agency, Inc., and asked if it were true that the premiums of the policy could be reduced by making the family's private medical insurance the primary source of coverage in the event that a family member were to sustain injuries in an automobile accident. Rafferty responded affirmatively. Therefore, on September 29, 1981, Banker signed an application for an endorsement to his automobile policy which would provide that his personal injury protection was to be excess over any other hospital or medical expense coverage. The endorsement was issued and caused a subsequent reduction in the premiums paid by Banker. The endorsement was made a part of the policy and was listed, in bold-faced lettering, in the Schedule of Endorsements in the policy which the Bankers received from Valley Forge.

On February 23, 1983, Sharon Banker, the insured's minor daughter, was rendered a quadriplegic by injuries received in an accident involving a motor vehicle in which she had been riding as a passenger. The Bankers incurred substantial medical expenses and gave notice to Rafferty and the Wagner Agency, which in turn, notified Valley Forge. Because of the excess coverage endorsement, however, the Bankers were instructed to submit

their medical bills to their private health care insurer and were told that Valley Forge would pay only those bills for which the primary health care carrier denied coverage.

The Bankers commenced an action against Valley Forge and also against Rafferty and the Wagner Agency in which they sought to invalidate the excess insurance endorsement and compel payment of the medical bills incurred on behalf of their daughter. They alleged in an amended complaint that Valley Forge had failed to inform them that except for the endorsement they could have recovered from both insurers or retained the private health insurance maximum benefits for non-accident related bills. Valley Forge filed preliminary objections in the nature of a demurrer to the complaint. It argued that the endorsement which the insured had requested more than two years before the accident was clear and unambiguous and that under the circumstances it had no duty to offer an explanation of the endorsement to its insured. The trial court agreed and sustained the preliminary objections.

363 Pa.Super. at 458–60, 526 A.2d at 435 (footnotes omitted). In its order dismissing Valley Forge, the trial court also dismissed present appellees Rafferty and the Wagner Agency, even though they had filed neither answers to the complaint nor preliminary objections.

On appeal, the *Banker I* Court affirmed the dismissal with respect to Valley Forge, holding that the decision was controlled by the contract principles outlined in *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983). Specifically, the panel reasoned that:

where, as here, the policy provision is clear and unambiguous, neither the insurer nor its agents have a duty to explain all of the hypothetical consequences which may result from an excess coverage endorsement which the insured has specifically requested. The trial court correctly held that the amended complaint failed to state a cause of action against Valley Forge.

363 Pa.Super. at 464, 526 A.2d at 438. The panel remanded the case with respect to appellees Rafferty and the Wagner Agency, however, because the question of the sufficiency of the complaint as to them was not before the trial court. The panel was careful to emphasize that the decision regarding Valley Forge in no way affected the Bankers' separate cause of action against Rafferty and the Wagner Agency:

> The trial court also dismissed appellants' amended complaint against the insurance brokers who had obtained for appellants the policy of insurance and the excess insurance endorsement thereto. This was error. Rafferty and the Wagner Agency, although having been served with the amended complaint, did not file preliminary objections thereto or answer the complaint on the merits. They requested and received an extension of time within which to file a pleading, but they had not filed the same when Valley Forge's preliminary objections were decided. With respect to Rafferty and the Wagner Agency, therefore, there was nothing before the trial court which required decision. For the court to dismiss the complaint against them sua sponte was improper. *It may be, of course, that appellants will ultimately be unable to plead or prove a legally cognizable cause of action against the brokers, but that is a matter separate from the cause of action alleged against Valley Forge and must await further proceedings.*

*Id.,* 363 Pa.Superior Ct. at 465, 526 A.2d at 438 (emphasis supplied).

On remand, Rafferty and the Wagner Agency filed answers to the amended complaint. Thereafter, on April 11, 1988, depositions were taken of Margaret Banker, Walter Banker, and Bernard Rafferty, and those depositions were filed with the trial court. Both Rafferty and the Wagner Agency then filed motions for summary judgment, and the Bankers filed responses thereto. On June 26, 1989, the court below filed a Memorandum Order granting the motions for summary judgment, and this timely appeal followed.

Our standard of review of the granting of a motion for summary judgment is well-settled:

A motion for summary judgment may properly be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Hedlund Mfg. Co. v. Weiser*, 517 Pa. 522, 539 A.2d 357 (1988); *see also Gabovitz v. State Auto Ins. Ass'n*, 362 Pa.Super. 17, 523 A.2d 403 (1987); Pa.R.Civ.P. 1035(b). Summary judgment may be entered only in cases that are clear and free from doubt. *Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 430, 456 A.2d 1009, 1011 (1983). Additionally, the record must be examined in the light most favorable to the non-moving party, accepting as true all well-pleaded facts in its pleadings and giving that party the benefit of all reasonable inferences drawn therefrom. *Hower v. Whitmak Assoc.*, 371 Pa.Super. 443, 445, 538 A.2d 524, 525 (1988); *Ferguson v. King*, 362 Pa.Super. 543, 524 A.2d 1372 (1987). Moreover in summary judgment proceedings, the court's function is not to determine the facts, but only to determine if a material issue of fact exists. *French v. United Parcel Service*, 377 Pa.Super. 366, 372, 547 A.2d 411, 414 (1988). Thus an order granting a motion for summary judgment will not be reversed unless the court below has committed an error of law or clearly abused its discretion. *Ackler v. Raymark Indus. Inc.*, 380 Pa.Super. 183, 185, 551 A.2d 291, 292 (1988); *Jones v. Keystone Ins. Co.*, 364 Pa.Super. 318, 321, 528 A.2d 177, 179 (1987); *Miller v. Federal Kemper Ins. Co.*, 352 Pa.Super. 581, 585–86, 508 A.2d 1222, 1225 (1987).

*Kaller's Inc. v. Spencer Roofing*, 388 Pa.Super. 361, 364, 565 A.2d 794, 795–96 (1989).

The court below was of the opinion that disposition of the motions for summary judgment was controlled by *Banker I.* The court held that, "the claims against all defendants are really indivisible and as such the duties owed by Agent

Rafferty and Agency Wagner Insurance are inseparable from those owed by the insurer Valley Forge Insurance Company." *See* Memorandum Order, June 26, 1989, at 1. Although the court did not specify the basis for this conclusion, appellees submit that the court's reasoning was correct under either the law of the case doctrine or res judicata. We cannot agree.

■ The "law of the case" doctrine applies,

only if, *inter alia*, the parties on the two appeals are the same. 'It is hornbook law that issues decided by an appellate court on a prior appeal *between the same parties* become the law of the case and will not be reconsidered on a second appeal.' *Commonwealth v. Tick, Inc.,* 431 Pa. 420, 427, 246 A.2d 424, 427 (1968) (citations omitted) (emphasis supplied). *See also Burke v. Pittsburgh Limestone Corp.,* 375 Pa. 390, 394, 100 A.2d 595, 598 (1953) ('[t]he doctrine of "the law of the case" is that, when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the *same case,* reverse its previous ruling even though convinced that it was erroneous....') (citation omitted) (emphasis supplied); *Daniels v. State Farm Mut. Auto Ins. Co.,* 305 Pa.Superior Ct. 352, 356, 451 A.2d 684, 686 (1982) (same); *Albright v. Wella Corp.,* 240 Pa.Superior Ct. 563, 567, 359 A.2d 460, 463 (1976) (same). *Accord* 21 C.J.S. *Courts* § 195a, at 330 (1940) (' "Law of the case" ... means that whatever is once irrevocably established as the controlling legal rule of decision *between the same parties in the same case continues to be the law of the case....*') (emphasis supplied).

*Muhammad v. Strassburger,* 374 Pa.Super. 613, 618–19, 543 A.2d 1138, 1140 (1988), *alloc. granted* 520 Pa. 618, 554 A.2d 510 (1989).

■ Here, appellees were party defendants in the underlying action in *Banker I.* However, the appeal in *Banker I* did not resolve any issue involving Rafferty or the Wagner Agency. As noted above, at the time Valley Forge filed

preliminary objections in the trial court, appellees still had not filed answers to the Bankers' amended complaint. For this reason, *Banker I* explicitly refused to rule on the sufficiency of the Bankers' complaint against Rafferty and the Wagner Agency, and remanded the case as to them. Thus, although we rendered a decision on the merits in *Banker I,* the issue decided was not between the Bankers and present appellees, but between the Bankers and Valley Forge. Because the issue decided in *Banker I* was not between the same parties who are on this appeal, the law of the case doctrine does not bar appellants' action against Rafferty and the Wagner Agency.

 For res judicata to bar an action, four criteria must be met:

1. identity in the thing sued upon;
2. identity in the cause of action;
3. identity of persons and parties to the action; and
4. identity of the capacity of the parties suing or being sued.

*See Gutman v. Giordano,* 384 Pa.Super. 78, 80, 557 A.2d 782, 783 (1989) (quoting *In re Jones & Laughlin Steel Corp.,* 328 Pa.Super. 442, 477 A.2d 527 (1984)). Here, as we have noted, the decision in *Banker I* was between the Bankers and Valley Forge, and did not resolve any dispute between the Bankers and appellees. Thus, there is not an identity in the persons and parties to the action, and, accordingly, res judicata does not bar appellants' action against Rafferty and the Wagner agency.

 We should also note that the collateral estoppel doctrine does not bar the action against Rafferty and the Wagner Agency.[1]

---

1. Neither appellee has argued that collateral estoppel bars the action below. However, because it is settled that this court is free to affirm a correct decision of the trial court on any ground, *see Penn Piping Inc. v. Insurance Co. of N. Am.,* 382 Pa.Super. 19, 554 A.2d 925 (1989), *alloc. granted* 523 Pa. 632, 564 A.2d 1261 (1989), and because the court below did not articulate the theory upon which it based its conclusion that the action was barred, a discussion of collateral estoppel is appropriate.

The doctrine of collateral estoppel operates to preclude a question of law or an issue of fact which has once been litigated in a court of competent jurisdiction from being relitigated in a subsequent proceeding. There is no requirement that there be an identity of parties in the two actions in order to invoke the bar. Collateral estoppel may be used as either a sword or a shield by a stranger to the prior action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action. Collateral estoppel applies if five elements are present: 1) the issue decided in the prior case is identical to the one presented in the later case; 2) there was a final judgment on the merits; 3) the party against whom the plea is asserted was a party or in privity with a party to the prior case; 4) the party against whom the doctrine is asserted or his privy has had a full and fair opportunity to litigate the issue in the prior proceeding; and 5) the determination in the prior case was essential to the judgment therein. *Schubach v. Silver*, 461 Pa. 366, 377, 336 A.2d 328, 333–34 (1975); *Matson v. Housing Authority of Pittsburgh*, 326 Pa.Super. 109, 112–13, 473 A.2d 632, 634 (1984); *Day v. Volkswagenwerk Aktiengesellschaft*, 318 Pa.Super. 225, 236, 464 A.2d 1313, 1318 (1983); Restatement (Second) of Judgments § 27.

*Mellon Bank v. Rafsky*, 369 Pa.Super. 585, 592, 535 A.2d 1090, 1093 (1987); *see also Phillip v. Clark*, 385 Pa.Super. 229, 235, 560 A.2d 777, 780 (1989). Here, there is no question that the latter four elements of the collateral estoppel doctrine are present. After careful review of the record, however, we cannot conclude that the issue presented below was the same issue as that decided in *Banker I*, and thus the collateral estoppel doctrine does not bar appellants' action.

In *Banker I*, appellants' complaint alleged that even though the excess insurance endorsement that they requested contained clear and unambiguous language, Valley Forge had a duty to explain the collateral consequences of the endorsement to them. The *Banker I* Court disagreed,

noting that "[w]hen the insured requested that an excess coverage endorsement be added to his policy, he neither requested the insurer's advice on the advisability of the requested change nor indicated that he was unaware of the collateral consequences of the change." 363 Pa.Super. at 463, 526 A.2d at 437. The Court therefore found that Valley Forge did not have a duty to explain the "hypothetical consequences" of the excess coverage endorsement. *See id.*, 363 Pa.Superior Ct. at 464, 526 A.2d at 438. The decision in *Banker I* turned upon a straightforward application of the contract principles enunciated in *Standard Venetian Blind Co. v. American Empire Insurance Co.* to the amended complaint that had been filed. In this regard, the *Banker I* Court was careful to note that there was no need to allow appellants to amend their complaint, because "[a]ppellants did not disclose to the trial court and have not enlightened us with alternative facts which would support a cause of action against Valley Forge." 363 Pa.Super. at 465, 526 A.2d at 438.

This case is similar to *Banker I* in that appellants are seeking to invalidate the same clear and unambiguous excess insurance endorsement. However, unlike *Banker I*, appellants, on remand, presented deposition testimony that *did* enlighten the trial court with alternative facts that would support their cause of action against Rafferty and the Wagner Agency. In her deposition, Margaret Banker stated that she had relied on Bernard Rafferty to handle her automobile insurance since the early 1970s. *See* Deposition of Margaret Banker, April 11, 1988 at 7. She further stated that in the fall of 1981, she contacted Rafferty, who then worked out of the Wagner Agency's office, to inquire about reducing her automobile insurance premiums. She contacted Rafferty because she had read an article in the paper that led her to believe that an insured who had medical coverage through both an automobile insurance policy and a medical insurance policy could not recover under both policies. *See id.* at 12–13. She articulated this understanding to Rafferty in a telephone conversation, and

stated that she thought it was "silly" to pay for both coverages when she could only collect from one. *See id.* at 12–13, 19–20, 47–48. She further stated that Rafferty did not correct her misunderstanding of the scope of her coverage, but instead simply sent her the endorsement to sign, which made her no-fault coverage excess to her medical insurance, thereby reducing her premiums. *See id.* at 20.

Rafferty's deposition testimony corroborated Mrs. Banker's description of the phone conversation in certain respects. Rafferty stated that he informed Mrs. Banker that she could reduce her premiums by making her private health care insurance primary and her no-fault insurance excess. *See* Deposition of Bernard J. Rafferty, April 11, 1988 at 12. However, Rafferty also stated that he specifically informed Mrs. Banker of her ability to "double dip"— i.e., to collect from both her private health care insurance *and* her no-fault insurance—if she retained her present coverage. *See id.* This deposition testimony specifically contradicted Mrs. Banker's deposition, as she had stated that Rafferty never spoke of the ramifications of the insurance change, and never mentioned her ability to "double dip." *See* Deposition of Margaret Banker, April 11, 1988 at 48.

■ Construing this deposition testimony in the light most favorable to the Bankers, as we must, it is clear that Mrs. Banker's testimony was sufficient to raise a question of material fact concerning whether appellees, her insurance brokers, failed to correct her misinformation about the nature of her coverage, and failed to inform her of the actual consequences of her decision to change her coverage. The allegation that appellees had failed in this regard, in turn, was sufficient to support a cause of action based upon appellees' breach of a duty of good faith and fair dealing to their insureds, which would include a duty of full and complete disclosure. This duty has long been recognized in this Commonwealth:

We have long recognized that: "the utmost fair dealing should characterize the transactions between an insur-

ance company and the insured." *Fedas v. Insurance Company of the State of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930).... The duty of an insurance company to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies ... This is especially true where the insurer undertakes to advise and counsel the insured in the insured's claims for benefits.

*Dercoli v. Pennsylvania Nat'l Mut. Ins. Co.*, 520 Pa. 471, 477, 554 A.2d 906, 909 (1989).[2]

As we have noted above, summary judgment may be entered only in cases that are clear and free from doubt. *See Kaller's Inc. v. Spencer Roofing, supra.* In this case, unlike *Banker I*, appellants are not simply alleging that appellees should have explained the "hypothetical consequences" of the change in their coverage. Instead, Mrs. Banker's deposition indicates that she specifically conveyed to Rafferty her *mistaken* understanding of the effect of the change, and he made no effort to correct that misinformation. In light of this testimony, it cannot be said, as in *Banker I*, that appellants failed to indicate that they were "unaware of the collateral consequences of the change." Thus, the record herein clearly is sufficient to support an action based upon a breach of the duty of good faith and fair dealing. Because this issue was not litigated in *Banker I*, appellants are not collaterally estopped from presenting this claim below. Moreover, because a review of the depositions indicate that there is a disputed fact concerning whether appellees breached this duty, the case may proceed to trial.

We should note that we recognize that the Bankers did not seek to amend their complaint to conform more specifi-

---

**2.** Justice Larsen's lead opinion in *Dercoli* was joined only by Justice Stout. Justice Papadakos filed a separate concurring opinion, which was joined by Justice McDermott, in which he stated that he "generally agreed with the reasoning set forth in the majority opinion." *See* 520 Pa. at 481, 554 A.2d at 911 (Papadakos, J., concurring). Chief Justice Nix noted his dissent, and Justice Flaherty, joined by Justice Zappala, filed a dissenting opinion.

cally to the evidence contained in the depositions.[3] The fact that the complaint is not as precise as it could be does not affect our disposition. Rule 1033 of the Pennsylvania Rules of Civil Procedure contains specific authorization for an amendment to conform a pleading to the evidence. *See also Rivera v. Philadelphia Theological Seminary*, 326 Pa.Super. 509, 526, 474 A.2d 605, 614 (1984), *aff'd as modified* 510 Pa. 1, 507 A.2d 1 (1986). Moreover, as we noted in *Rivera*, these amendments must be liberally allowed:

> Although such an amendment requires leave of court, it is now well settled that the right to amend must be liberally granted at any stage of the proceedings unless there is resulting prejudice to an adverse party. *Connor v. Allegheny General Hospital*, 501 Pa. 306, 311, 461 A.2d 600, 602 (1983); *Schaffer v. Larzelere*, 410 Pa. 402, 406-07, 189 A.2d 267, 270 (1963).... Thus, it has been held that general averments in the pleadings can be amended to make them specific in order to prevent a case from turning on purely technical objections. *Keller v. R.C. Keller Motor Co.*, 386 Pa. 56, 124 A.2d 105 (1956).

326 Pa.Super. at 527, 474 A.2d at 614 (citations omitted). Indeed, the *Banker I* panel recognized this rule:

> If it is evident that a pleading can be cured by amendment, a court may not enter a final judgment, but must give the pleader an opportunity to file an amended complaint. *Stevens v. Doylestown Building & Loan Assoc.*, 321 Pa. 173, 183 A. 922 (1936). This is a positive duty of the court and not a matter of discretion. *Framlau Corp. v. Delaware County*, 223 Pa.Super. 272, 299 A.2d 335 (1972).

363 Pa.Super. at 465, 526 A.2d at 438 (*quoting Mace v. Senior Adult Activities Center*, 282 Pa.Super. 566, 569, 423 A.2d 390, 391 (1980)). Accordingly, on remand, the trial

---

**3.** For example, although the complaint alleges that appellees breached a "confidential fiduciary relationship", it does not specifically allege a breach of a duty of good faith and fair dealing. Similarly, although the complaint details at some length Rafferty's failure to explain the alternative forms of coverage and the effect of the change in coverage, it does not aver that Margaret Banker expressed her misunderstanding of the effect of the change to Rafferty.

court should allow appellants to amend the complaint to conform more specifically to the evidence adduced, and the case may proceed to trial.

For the foregoing reasons, we reverse the order below granting summary judgment, and remand the case for trial. Jurisdiction is relinquished.

ROWLEY, J., concurs in the result.