587 A.2d 744

**Roslyn N. LONDO, Individually and as the Executrix of the Estate of Barnett D. Londo, Appellant,**

v.

**George McLAUGHLIN and Karr–Barth Associates (Two Cases).**

Superior Court of Pennsylvania.

Argued Jan. 10, 1991.

Filed March 11, 1991.

528

Mitchell A. Kramer, Philadelphia, for appellant.

Frank A. Luchak, Philadelphia, for McLaughlin, appellee.

Lawrence C. Norford, Philadelphia, for Karr–Barth, appellees.

Before WIEAND, MONTEMURO and HESTER, JJ.

HESTER, Judge:

Appellant, Roslyn N. Londo, individually and in her capacity as executrix of the estate of her deceased husband, Barnett D. Londo, instituted this action against George McLaughlin and Karr–Barth Associates, appellees. The

issue presented is whether appellant pled sufficient facts in her complaint to establish that she suffered damages. The trial court held that appellant failed to establish that she suffered damages as a result of the tortious conduct set forth in the complaint. We reverse.

Appellant instituted this action on September 27, 1989, against McLaughlin, who was her deceased husband's insurance agent, and Karr–Barth Associates, McLaughlin's employer. Her complaint contains the following allegations. George McLaughlin was an agent of Karr–Barth Associates and sold life insurance policies on behalf of the Equitable Life Assurance Society of the United States ("Equitable"). On October 7, 1987, McLaughlin met with Barnett Londo, appellant's husband, in order to sell him a life insurance policy.

Two paragraphs of the complaint must be reproduced to gain a clear understanding of the issue involved in this appeal. They state as follows:

11.   At that time [October 7, 1987], plaintiff's decedent already had a valid life insurance policy. Defendant McLaughlin informed plaintiff's decedent that he could obtain the *same* coverage for a cheaper premium.

12.   On or about October 7, 1987, an Application for Insurance ... for the purpose of purchasing a life insurance policy in the amount of $250,000.00 from the Equitable was prepared by McLaughlin and signed by Mr. Londo....

Complaint at 3 (emphasis added).

The complaint continues as follows. McLaughlin prepared the application for the Equitable policy, and Mr. Londo executed it. On question 14d, McLaughlin represented that Mr. Londo had not smoked within the past twelve months. McLaughlin had actual knowledge that Mr. Londo, in fact, smoked since the two were social friends and since Mr. Londo regularly smoked in front of McLaughlin.

The complaint further avers that Mr. Londo relied upon McLaughlin with respect to the transaction and that

McLaughlin had a duty to inform Mr. Londo to respond truthfully to the application. The complaint also contains allegations that McLaughlin misstated the answer to the smoking question in order to defraud Mr. Londo by obtaining a commission from the sale of the Equitable insurance policy. Meanwhile, McLaughlin knew that the fraudulent answer regarding smoking would result in no coverage under the Equitable policy and also knew that reduction of premiums was Mr. Londo's sole inducement to cancel the pre-existing, valid life insurance coverage.

After the application was completed, McLaughlin forwarded it to Equitable, which issued a policy with $250,000 in life insurance coverage to Mr. Londo. Mr. Londo died on January 8, 1988. When processing appellant's claim for benefits under the policy, Equitable mailed appellant a questionnaire that included a question about whether Mr. Londo smoked. McLaughlin told appellant to answer the question dishonestly, but she refused and told the company that her husband had smoked. When it discovered that Mr. Londo smoked, Equitable offered to pay appellant $128,549, which is the amount of coverage that Equitable would have given Mr. Londo for the premium that he paid Equitable if it had been informed of the smoking history. Appellant accepted that reduced benefit.

The complaint sets forth four counts: 1) fraud and deceit; 2) breach of fiduciary duty; 3) a violation of the Pennsylvania Fair Trade and Business Practices Act; and 4) negligence. The pleadings with respect to damages are contained in paragraphs 34 and 41, and the first paragraph contains the following averment: that "As a direct and proximate result of defendant's conduct, plaintiff sustained damages in the amount of $121,411.00, the difference between the benefit amount of the policy sold to Mr. Londo, and the benefit paid by the issuer, plus interest." Complaint at 7. Similarly, in paragraph 41, appellant alleged damages "in an amount equal to $121,451.00 plus interest through the loss of the value of their insurance policy." *Id.*

at 8. All allegations regarding the facts and damages are incorporated at each count.

Appellees filed preliminary objections in the nature of a demurrer alleging, *inter alia*, that the facts do not show that plaintiff suffered a legally cognizable injury as a result of the tortious conduct. On March 16, 1990, the court dismissed all counts as to all defendants. The court noted that even though Equitable may have had the right to rescind Mr. Londo's policy in its entirety, it offered appellant the option of accepting a reduced benefit equal to what Mr. Londo would have been entitled had the insurance company been notified of his smoking history. Trial court opinion, 7/23/90, at 2. The court therefore concluded that appellant did not suffer "any injury because she received precisely the same benefits she would have received had Mr. Londo truthfully revealed the fact that he smoked to the insurance company." *Id.*

On appeal, appellant argues that she is not seeking the difference between the Equitable coverages. Instead, her claim is for the difference between the coverage provided in the pre-existing valid, but canceled policy and the amount received from Equitable. She notes that the complaint clearly sets forth that McLaughlin induced Mr. Londo to cancel the valid policy, from which she would have received $250,000. This inducement was made in order to collect commissions on the premiums from the Equitable policy, and McLaughlin obtained Mr. Londo's consent to the cancelation of the first policy by promising reduced premiums from Equitable, which McLaughlin knew could be obtained only by falsifying the answer to the question about Mr. Londo's smoking history.

Appellees' counter argument is that the complaint never pleaded that Mr. Londo had a valid pre-existing policy on October 7, 1987, for $250,000. Appellees suggest that this "new" fact, raised only in the briefs, cannot be considered in assessing the legal sufficiency of the complaint. They also propose that the "complaint should be construed

against [appellant] on this appeal." Appellee's (Karr–Barth Associates) brief at 9.

However, the complaint is not construed against appellant; to the contrary, the complaint is viewed in the light most favorable to appellant, and we reject appellees' position that the complaint fails to set forth that Mr. Londo had valid, pre-existing life insurance coverage on October 7, 1987, for $250,000. Our scope of review of a challenge to an order sustaining a preliminary objection in the nature of a demurrer is well-settled:

> A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976). For the purpose of testing the legal sufficiency of the challenged pleading, a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts, *Savitz v. Weinstein* [395 Pa. 173, 149 A.2d 110 (1959); *March v. Banus* ] 395 Pa. 629, 151 A.2d 612 (1959), and every inference fairly deducible from those facts, *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970); *Troop v. Franklin Savings Trust,* 291 Pa. 18, 139 A. 492 (1927). The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer. *Savitz v. Weinstein, supra.*

*Morehall Contracting Co. v. Brittany Estates Limited Partnership,* 396 Pa.Super. 265, 267, 578 A.2d 508, 509 (1990), quoting *Mudd v. Hoffman Homes for Youth, Inc.,* 374 Pa.Super. 522, 524–25, 543 A.2d 1092, 1093–94 (1988).

█ In the present case, we conclude that a reasonable inference to be drawn from the complaint is that the canceled policy had coverage in the amount of $250,000. In paragraph 11, appellant alleges quite clearly that McLaughlin promised to obtain the "same" coverage from Equitable that Mr. Londo had under his existing policy. In the very next paragraph, appellant states that the Equitable policy coverage was $250,000. Thus, it is a fair *inference* from

reading this complaint that the canceled, pre-existing policy had coverage of $250,000.

Thus, the trial court's error is in characterizing appellant's claim solely as one relating to the Equitable insurance policy. Appellant's claim is that she would have had $250,000 in coverage under the policy that Mr. Londo canceled. Further, she claims this cancelation was made solely due to McLaughlin's misrepresentations that he could get the same coverage from Equitable for less premiums. However, McLaughlin, according to the complaint, knew that he could obtain those reduced premiums from Equitable only by misrepresenting Mr. Londo's smoking history.

■ We recently noted that the duty of good faith and fair dealing that applies to insurance companies also applies to insurance brokers. *Banker v. Valley Forge Insurance Co.*, 401 Pa.Super. 367, 585 A.2d 504 (1991). In *Banker,* we described the duty of insurance companies and brokers as follows:

> We have long recognized that: "the utmost fair dealing should characterize the transactions between an insurance company and the insured." *Fedas v. Insurance Company of the State of Pennsylvania,* 300 Pa. 555, 151 A. 285 (1930).... The duty of an insurance company to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies ...

*Id.,* 401 Pa.Super. at 378–379, 585 A.2d at 510.

■ Thus, appellant is correct that there is a legal duty to inform an insured of the consequences of actions relating to insurance, which in this case would be the consequence of no coverage under the policy if the insurer discovered that Mr. Londo smoked. Further, the complaint does contain allegations that breach of the duty of full disclosure and fair dealing induced the cancelation of the valid policy for $250,000.

■ Appellees raise a number of other points in their briefs. First, Karr–Barth Associates request that we affirm the trial court based on the fact that appellant failed to set forth a legal cause of action based on fraud in that Mr. Londo's reliance on McLaughlin's misrepresentations could not have been "justifiable" when Mr. Londo signed the fraudulent form. However, we note that the trial court order dismissed all counts of the complaint and that appellees' argument as to appellant's failure to state a cause of action relates only to the count of fraud. Therefore, it would be impossible for us to affirm the order that dismissed four counts based on a failure of only one or two counts.

Further, appellant's complaint was dismissed based on her alleged failure to plead damages. As she briefed only this issue on appeal, we do not have the benefit of her position as to others. Finally, the complaint does contain the elements of fraud in that it pleads that reliance was justifiable. Appellees' argument appears more in the nature of a summary judgment position than that of demurrer, where the moving party admits the factual allegations in the complaint.

■ For the same reasons, we do not find it appropriate to review whether appellant states a cause of action under the Pennsylvania Fair Trade and Business Practices Act. The sole issue on appeal is whether appellant's complaint contains sufficient allegations to plead damages. The trial court dismissed this action based on its perception that appellant failed to base her damages claim on the difference between the canceled policy and the amount from Equitable. It considered this action to be premised solely on the difference in the Equitable coverage and the fact that since appellant received what her husband purchased, she suffered no harm. However, irrespective of other defenses that may be available to appellees, it is clear that the complaint sufficiently sets forth damages. When read in the light *most favorable* to appellant and when *all* reasonable inferences from the complaint are drawn, it does state

that the pre-existing coverage equalled $250,000 and that damages were incurred because McLaughlin's actions resulted in appellant receiving less than she would have received under the canceled policy.

Appellees also have briefed extensively the issue of whether Equitable validly rescinded its $250,000 in coverage due to the fraud regarding Mr. Londo's smoking history. We do not doubt that Equitable did have this right. However, appellant did not institute this action against Equitable, and McLaughlin does not stand in Equitable's shoes.

■ We note that appellees have cited no case that supports the conclusion that *as a matter of law*, Mr. Londo's actions in participating in the fraud against Equitable prevents recovery against appellees based on *their fraud*. Appellees' cases discuss the liability of an insurance company which issued a fraudulently-obtained policy. However, McLaughlin is not Equitable, and Mr. Londo did not deceive him. The validity of Equitable's cancelation is not the issue. Rather, the issue is whether McLaughlin is liable for fraudulently inducing cancelation of the $250,000 policy that Mr. Londo had on October 7, 1987, in order to obtain commissions from the Equitable premiums. According to the complaint, this inducement occurred even though McLaughlin knew that Mr. Londo would cancel only if he could obtain reduced premiums, knew that the lower premiums were available only to nonsmokers, and knew that Mr. Londo smoked.

Order reversed and case remanded. Jurisdiction relinquished.