J-A07019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALVORD-POLK, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STRICKLER AGENCY, INC. | : | |
| | : | |
| Appellant | : | No. 915 MDA 2024 |

Appeal from the Judgment Entered June 18, 2024
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2020-CV-02069-CV

BEFORE:  BOWES, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED: APRIL 24, 2025**

Appellant, Strickler Agency, Inc., ("Strickler") appeals from the June 18, 2024 judgment entered in the Court of Common Pleas of Dauphin County upon a jury verdict in favor of Alvord-Polk, Inc., ("Alvord-Polk") and against Strickler.  We affirm.

On September 6, 2024, the trial court filed its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) and set forth, in detail, the factual and procedural history of this case.  **See** Trial Court Opinion, 9/6/24, at 1-29.  We adopt the recitation of the facts and procedural history contained therein and shall not repeat the same.  In short, Alvord-Polk asserted a claim of professional negligence against Strickler after Alvord-Polk incurred losses following a fire at one of its manufacturing facilities that destroyed all its contents and equipment, also known as business personal property.  The losses were not covered, in full, by the insurance policy Strickler brokered and

_____

*Former Justice specially assigned to the Superior Court.

obtained for Alvord-Polk because the insurance policy did not provide for blanket agreed value coverage, as Alvord-Polk requested on its insurance coverage application but, instead, contained a coinsurance clause.[1]  Upon the

_____

[1] A "coinsurance" clause, within the context of commercial property insurance, is a provision requiring an insured to insure its property for a specific percentage of the property's value in order to avoid a "penalty" (or reduction) in the claim payout.  The coinsurance clause allows insurers to set appropriate premium amounts on policies to remain solvent.  N.T., 2/2/24, at 997-999.

"Agreed value" insurance coverage is a type of coverage whereby the insured and insurer agree, prior to the effective date of the insurance policy, to the value of the insured's property.  The agreed value is the amount the insured will recover in the event of a total loss of the covered item, regardless of replacement cost or actual cost.  If agreed value coverage is elected, the coinsurance provision is waived.  *Id.* at 999-1001.

"Blanket coverage" is used, often, by businesses with more than one location.  Blanket coverage provides a single coverage limit for the insured property, *i.e.*, $300,000.00 on all business personal property at multiple locations, rather than individual limits for each insured property item or each insured location.  The single coverage limit may then be applied to a covered loss at any location.  This type of coverage allows an insured to move business personal property between the various locations and still maintain coverage.  *Id.* at 1001-1003.

Thus, with blanket agreed value coverage, the insured and the insurer have agreed to the values of the insured's property, *i.e.*, inventory (business personal property), at multiple locations and the insurance policy provides for blanket coverage at the aggregate of the agreed-to-value amounts.  For example, if the insured has three warehouses and the insured and insurer agree that each warehouse typically contains $100,000.00 of inventory, the insurance policy may be written so that the blanket agreed value coverage of the business personal property is $300,000.00.  If, by way of further example, the insured moves inventory between warehouses so that on the date of loss one warehouse has $150,000.00 of inventory, while the other two warehouses, which did not sustain a loss, have $100,000.00 and $75,000.00 of inventory, the $175,000.00 of inventory located at the warehouse incurring

close of the evidence at trial, the trial court directed a verdict in favor of Alvord-Polk and against Strickler on the issue of professional negligence, including whether, or not, Strickler owed a duty to Alvord-Polk and Strickler breached any duty it owed. After deliberation, the jury rendered a verdict on the issue of damages in favor of Alvord-Polk and against Strickler in the amount of $4,600,000.00, which equaled the property loss Alvord-Polk incurred and was not covered by its insurance policy. Both parties filed post-trial motions, which the trial court denied on June 13, 2024. The judgment was entered on June 18, 2024, in favor of Alvord-Polk and against Strickler in the amount of $4,600,000.00. This appeal followed.[2]

Strickler raises the following issue for our review:

Did the trial court err by directing a verdict of professional negligence against Strickler where there was conflicting expert testimony on the issue, and the [trial] court's actions deprived the jury of its exclusive power to weigh the credibility of this testimony and determine whether Strickler met its standard of care?

Strickler's Brief at 4.

---

the loss will be fully covered because the policy limit for the type of covered property is $300,000.00.

In the case *sub judice*, Alvord-Polk requested blanket agreed value coverage in its insurance coverage application. The insurance policy, as written, did not contain blanket agreed value coverage but, instead, contained a coinsurance clause.

[2] The trial court did not direct Strickler to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b). The trial court filed its Rule 1925(a) opinion on September 6, 2024.

In reviewing the trial court's entry of a motion for a directed verdict, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. A directed verdict may be granted only where the facts are clear and there is no room for doubt. In deciding whether[, or not,] to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the non[-]moving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony.

*Berg v. Nationwide Mut. Ins. Co., Inc.*, 44 A.3d 1164, 1170 (Pa. Super. 2012) (citations and quotation marks omitted), *appeal denied*, 65 A.3d 412 (Pa. 2013); *see also Whittington v. Daniels*, ___ A.3d ___, 2025 WL 543136, at *3 (Pa. Super. filed Feb. 19, 2025) (slip opinion). Our review of the trial court's decision requires us to view the evidence in the light most favorable to the non-moving party and accept as true all evidence which supports that party's contention and reject all adverse testimony.[3] *Hall*, 54

_____

[3] In prior cases, the standard of review of a trial court's decision to grant, or deny, a motion for directed verdict required this Court to "consider the evidence, together with all inferences drawn therefrom, in the light most favorable to the **verdict winner**." *Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012) (emphasis added), *appeal denied*, 69 A.3d 243 (Pa. 2013); *see also Morrissey v. St. Joseph's Preparatory Sch.*, 323 A.3d 792, 802 (Pa. Super. 2024); *compare with*, *Boyce v. Smith-Edwards-Dunlap Co.*, 580 A.2d 1382, 1386 (Pa. Super. 1990), *appeal denied*, 593 A.2d 413 (Pa. 1991); *see also Maverick Steel Co, L.L.C. v. Dick Corp./Barton Malow*, 54 A.3d 352, 356 (Pa. Super. 2012), *appeal denied*, 65 A.3d 415 (Pa. 2013); *Fetherolf v. Torosian*, 759 A.2d 391, 393 (Pa. Super. 2000), *appeal denied*, 796 A.2d 983 (Pa. 2001). This description is based upon the principle that the "standards of review when considering [] motions for a directed verdict and a judgment notwithstanding the verdict [("JNOV")] are identical." *Hall*, 54 A.3d at 395. While the underlying principle – the standard of review on motions for a directed verdict and a JNOV

A.3d at 395 (stating that, an appellate court reviews the evidence in the same light as the trial court). We review a trial court's legal rulings *de novo*. ***International Diamond Imps., Ltd. v. Singularity Clark, L.P.***, 40 A.3d 1261, 1274 (Pa. Super. 2012).

> There are two bases upon which a directed verdict can be entered; one, the movant is entitled to judgment as a matter of law [or] two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the [trial] court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in [the movant's] favor. Whereas with the second, the [trial] court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

***Morrissey***, 323 A.3d at 802 (original brackets omitted); ***see also Hall***, 54 A.3d at 395; ***Whittington***, ___ A.3d ___, 2025 WL 543136, at *3.

It is well-established that "[t]he utmost fair dealing should characterize the transactions between an insurance company and the insured." ***Fedas v. Ins. Co. of State of Pennsylvania***, 151 A. 285, 286 (Pa. 1930); ***see also Dercoli v. Pennsylvania Nat'l Mut. Ins. Co.***, 554 A.2d 906, 909 (Pa. 1989);

---

are identical - is true, a motion for a directed verdict is made at the close of all the evidence and before the case is submitted to the jury. **See** Pa.R.Civ.P. 226(b) (stating, "[a]t the close of all the evidence, the trial [court] may direct a verdict upon the oral or written motion of any party"). Because of the precise procedural posture in which a directed verdict is entered by a trial court, we owe no deference to the findings of a jury which favor the verdict winner. Thus, to avoid confusion as to which party is entitled (within the context of appellate review) to the benefit of evidentiary inferences arising from contested facts, we shall simply identify that litigant as the "non-moving party."

*Banker v. Valley Forge Ins. Co.*, 585 A.2d 504, 510 (Pa. Super. 1991), *appeal denied*, 600 A.2d 532 (Pa. 1991). The insurer has a duty to deal with the insured fairly and in good faith, which includes the duty of full and complete disclosure of the benefits and limitations of an insurance policy. *Dercoli*, 554 A.2d at 909; *see also Banker*, 585 A.2d at 510; *Egan v. USI Mid-Atlantic, Inc.*, 92 A.3d 1, 20 (Pa. Super. 2014).

The duty to deal fairly and in good faith with full and complete disclosure extends, not only to an insurance agent, but also to an insurance broker.[4] *Egan*, 92 A.3d at 20 (stating that, the "duty extends to insurance brokers"); *see also Londo v. McLaughlin*, 587 A.2d 744, 747-748 (Pa. Super. 1991) (stating, "the duty of good faith and fair dealing that applies to insurance companies also applies to insurance brokers"). Thus, an insurance broker has

---

[4] This Court previously described the difference between an insurance agent and insurance broker as follows:

> An insurance broker is one who acts as a middleman between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and upon securing an order, placing it with a company selected by the insured or with a company selected by [the broker. An] insurance agent is one who represents an insurer under an employment [agreement entered into between the insurer and its agent.]

*Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571, 578 (Pa. Super. 2006), *appeal denied*, 920 A.2d 834 (Pa. 2007); *see also* BLACK'S LAW DICTIONARY 176 (5th ed. 1979) (defining "insurance broker" as a "[p]erson who obtains insurance for individuals or companies from insurance companies or their agents. [An insurance broker d]iffers from an insurance agent in that he [or she] does not represent any particular [insurance] company.").

"a legal duty to inform an insured of the consequences of actions relating to insurance, which [includes] the consequence of no coverage under the policy[.]" **Londo**, 587 A.2d at 748.

It is well-established that "the insurer ha[s] a duty to advise an insured that it [] issued a policy that differs from what the insured requested." **Toy v. Metropolitan Life Ins. Co.**, 863 A.2d 1, 13 (Pa. Super. 2004), *aff'd*, 928 A.2d 186 (Pa. 2007); **see also Tonkovic v. State Farm Mut. Auto. Ins. Co.**, 521 A.2d 920, 925 (Pa. 1987) (stating, "[w]hen the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made"). Thus, in applying the same duty to an insurance broker under the principle that an insurance broker must deal fairly and act in good faith with full and complete disclosure, the same as the insurer, an insurance broker has a duty to affirmatively notify an insured that the policy issued by the insurer does not contain the same coverage provisions that were requested by the insured. **Toy**, 863 A.2d at 13; **see also Tonkovic**, 521 A.2d at 925; **Al's Café Inc. v. Sanders Ins. Agency**, 820 A.2d 745, 750 (Pa. Super. 2003) (stating, an insured "acquires a cause of action against his [or her insurance] broker or agent where the [insurance] broker neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective through the [insurance broker's] fault" (quotation marks and citation omitted)).

In the case *sub judice*, the trial court set forth its rationale for granting Alvord-Polk's motion for a directed verdict (**see** Trial Court Opinion, 9/6/24,

- 7 -

at 31-34), and we incorporate this portion of the trial court's opinion as if set forth herein. We have thoroughly reviewed the record and discern no abuse of discretion or error of law in the trial court's grant of Alvord-Polk's motion for a directed verdict. *Berg*, 44 A.3d at 1170.

The evidence presented at trial demonstrates that Strickler's expert, Mr. Ahart, testified that an insurance broker has a duty to procure the coverage as requested by the insured or to advise the insured that the coverage is not available or was not included in the insurance coverage.[5] N.T., 2/2/24, at 1003. The insurance policy issued by the insured to Alvord-Polk was a 3-year policy covering the period of July 27, 2017, to July 27, 2020. *Id.* at 1008-1009; *see also* Exhibit P-40. Mr. Ahart agreed that Strickler breached its duty to Alvord-Polk when it received the insurance policy from the insured and failed to realize, or to disclose, that the insurance policy did not contain the requested coverage as it pertained to Alvord-Polk's business personal property. N.T., 2/2/24, at 1008-1009.

In June 2018, 11 months after the 3-year insurance policy became effective, Strickler provided Alvord-Polk a "proposal" that summarized the business personal property coverage as provided by the terms of the insurance policy but that was still different from the coverage requested by

---

[5] Mr. Ahart was admitted as an expert in the insurance industry's standard of care and the liabilities of insurance brokers and agents. N.T., 2/2/24, at 995-996.

Alvord-Polk.[6]  *Id.* at 1010-1012.  Mr. Ahart suggested that Alvord-Polk was, therefore, aware of the coverage for its business personal property upon receipt of the 2018 "proposal" because the coverage terms were provided to it in writing by Strickler, even though Strickler was unaware that the coverage terms differed from the requested provisions.  *Id.* at 1011-1013.  On cross-examination, Mr. Ahart agreed that the 2018 "proposal" was not a proposal to obtain new insurance coverage because the effective insurance policy was a 3-year policy and the term of the policy did not expire until 2020.  *Id.* at 1053-1054.  Rather, Mr. Ahart stated that the "proposal" was really a "snapshot of what coverage was in force" and that no part of the "proposal" indicated that it was a proposal correcting the coverage error.  *Id.*  Mr. Ahart further acknowledged that there was no evidence that a representative of Alvord-Polk acknowledged that it reviewed the "proposal" and agreed to the terms by signing the 2018 "proposal."  *Id.* at 1047.  Instead, Mr. Ahart understood that both Alvord-Polk and Strickler were unaware of the coverage error until after the loss event.  *Id.* at 1011-1012, 1047, 1056-1057.  In fact, Mr. Ahart agreed that Strickler never informed Alvord-Polk that there was a

---

[6] Mr. Ahart explained that the 2018 "proposal" set forth the business personal property coverage as detailed by the insurance policy because the information contained in the "proposal" was downloaded directly from the terms of the insurance policy *via* a computer software program.  N.T., 2/2/24, at 1011-1012.  Unlike Strickler's preparation of the 2017 proposal, Strickler did not manually input the information used to create the 2018 "proposal."  *Id.* Strickler simply extracted the information using a software program.  *Id.*

discrepancy between the business personal property coverage requested and the coverage provided by the insurance policy. *Id.* at 1057.

In viewing the evidence in the light most favorable to Strickler, as the non-moving party, we concur with the trial court that no two reasonable minds could disagree that Strickler breached its duty to advise Alvord-Polk that the coverage provisions of its policy differed from those it requested and, as such, Alvord-Polk was entitled to a directed verdict on the issues of duty and breach of duty. Consequently, we discern no abuse of discretion or error of law in the trial court's order granting a directed verdict, in part, in favor of Alvord-Polk. As we rely in part upon the able trial court's opinion, a copy of said opinion shall be attached to any further filings in this appeal.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/24/2025